# EXHIBIT A

COPY

**BY FAX**

1  PAUL DAVID MAROTTA (State Bar No. 111812)
   MEGAN JEANNE (State Bar No. 251294)
2  THE CORPORATE LAW GROUP
   1342 ROLLINS ROAD
3  BURLINGAME, CA 94010
   Telephone:    (650) 227-8000
4  Facsimile:    (650) 227-8001
   paul@tclg.com
5  megan@tclg.com

6  Attorneys for Plaintiffs
   MENTOR CAPITAL, INC. and
7  MENTOR PARTNER I, LLC

FILED

MAY 28 2019

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: G Roary, Deputy

8              CALIFORNIA SUPERIOR COURT

9            IN AND FOR THE COUNTY OF MARIN

10  MENTOR CAPITAL, INC., a Delaware          )
    corporation, and MENTOR PARTNER I,        )     Civil Action No. CIV **190204**
11  LLC, a California limited liability company; )
                                              )
12      Plaintiffs.                           )     VERIFIED COMPLAINT FOR
                                              )     MONEY DAMAGES AND
13                                            )     INJUNCTION
            v.                                )
14                                            )
    G FARMALABS LIMITED, a Nevada             )
15  corporation, ATANACHI GONZALEZ, an        )
    individual, NICOLE GONZALEZ, an           )
16  individual aka NICOLE ALVAREZ, G          )
    FARMALABS DHS, LLC, a California          )
17  limited liability company, GFBRANDS, INC.,)
    a Nevada corporation fka G                )
18  FARMABRANDS, INC., FINKA                  )
    DISTRIBUTION, INC., a California          )
19  corporation, G FARMALABS WA, LLC, a       )
    Washington limited liability company, GOYA)
20  VENTURES, LLC, a California limited        )
    liability company, and DOES 1 through 50  )
21                                            )
22      Defendants.                           )
                                              )
23

24                        **COMPLAINT**

25                    NATURE OF THE ACTION

26      1.    This is an action for money damages for breach of several financing agreements

27  including promissory notes, leases, and other agreements, as well as an action for an injunction, to

28  recover leased property, recover collateral under a security agreement, and collect from three

- 1 -

VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

1   guarantors, for all of the above.

2   THE PARTIES

3   2.    Plaintiff Mentor Capital, Inc. ("Mentor Capital") is a corporation duly organized and

4   existing under the laws of the State of Delaware having a principal place of business at 511 14th

5   Street, Unit A-2, Ramona, San Diego County, California 92065.

6   3.    Plaintiff Mentor Partner I, LLC ("Mentor Partner I") is a limited liability company

7   wholly owned by Plaintiff Mentor Capital, duly organized and existing under the laws of the State

8   of California, having a principal place of business at 511 14th Street, Unit A-2, Ramona, San Diego

9   County, California 92065.

10   4.    Defendant G FarmaLabs Limited is a corporation with entity number E0470592014-

11   7, formed, duly organized, and existing under the laws of the State of Nevada and having a principal

12   place of business in California at 369 3rd Street, #464, San Rafael, California  94901.

13   5.    Defendant G FarmaLabs Limited is qualified to do business in California as entity

14   number C4106544.

15   6.    Defendant Atanachi ("Ata") Gonzalez is an individual whom the Plaintiffs are

16   informed and believe, and thereon allege, has his principal residence at 3932 Santa Anita Lane, Yorba

17   Linda, California 92886.

18   7.    Defendant Nicole Gonzalez, aka Nicole Alvarez, is an individual whom the Plaintiffs

19   are informed and believe, and thereon allege, has her principal residence at 3932 Santa Anita Lane,

20   Yorba Linda, California 92886.

21   8.    Defendant G FarmaLabs DHS, LLC is a limited liability company with entity number

22   201731510153 formed, duly organized, and existing under the laws of the State of California and

23   having a principal place of business in California at 369 3rd Street, #464, San Rafael, California

24   94901.

25   9.    Defendant GFBrands, Inc. is a corporation with entity number E0299672015-9,

26   formed, duly organized, and existing under the laws of the State of Nevada and having a principal

27   place of business in California at 369 3rd Street, #464, San Rafael, California  94901.

28   10.   Defendant GFBrands, Inc. was formerly named G FarmaBrands, Inc.

- 2 -

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

11.     Plaintiffs are informed and believe and thereon allege that Defendant GFBrands is not qualified to do business in California.

12.     Defendant Finka Distribution, Inc., is a corporation with entity number C4119675 formed, duly organized, and existing under the laws of the State of California and having a principal place of business in California at 369 3rd Street, #464, San Rafael, California 94901.

13.     Defendant G FarmaLabs WA, LLC is a limited liability company formed, duly organized, and existing under the laws of the State of Washington.

14.     Plaintiffs are informed and believe and thereon allege that Defendant G FarmaLabs WA, LLC is not qualified to do business in California.

15.     As of May 15, 2019 the Washington Secretary of State online portal lists the status of Defendant G FarmaLabs WA, LLC as, "Administratively Dissolved."

16.     Defendant Goya Ventures, LLC is a limited liability company with entity number 201835110853 formed, duly organized, and existing under the laws of the State of California and having a principal place of business in California at 369 3rd Street, #464, San Rafael, California 94901.

17.     Plaintiffs do not know the true names or capacities, whether individual, corporate, associate, or otherwise of other persons responsible for the actions alleged herein.  Plaintiffs will seek leave to amend this Complaint when the true names and capacities of such persons have been ascertained.

18.     Plaintiffs are informed and believe and thereon allege, that at all times mentioned herein, each Defendant was, and is, the agent, affiliate, servant, alter ego, joint venturer, employer, principal, and/or employee of each of the other Defendants, and that all of the things alleged to have been done by each of such Defendants were done in the capacity of, and as the agents of, the other Defendants, as well as on their own behalf and for their own personal gain.

19.     Plaintiffs are informed and believe and thereon allege, that Defendants control dozens of entities, formed in several different states, and that they use these entities to shield and hide assets and funds, regularly commingling funds.

20.     Plaintiffs are informed and believe and thereon allege that the entity Defendants, both

- 3 -

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

1  named and unnamed here, have failed to keep corporate formalities, are undercapitalized, are mere

2  shells and instrumentalities to conduct a single venture.

3      21.    Plaintiffs are informed and believe and thereon allege, that all Defendants named

4  herein are alter egos of each other Defendant, that they are not and have not been treated as separate

5  entities, and that they have all been used to perpetrate a fraud on Plaintiffs.

6                              JURISDICTION, VENUE, AND LAW

7      22.    Each of the Parties to the Note Purchase Agreement, described herein, consented to

8  the exclusive personal jurisdiction of the state or federal court in California to decide any dispute

9  thereunder. [Note Purchase Agreement, Section 9(a)].

10     23.    The amount in controversy hereunder is in excess of $25,000.

11     24.    The principal offices in California for Defendants G FarmaLabs Limited; G

12  FarmaLabs DHS, LLC; GFBrands, Inc.; Finka Distribution, Inc.; and Goya Ventures, LLC are in

13  San Rafael, California, in the County of Marin.

14     25.    Venue is proper in this Court under California Code of Civil Procedure Section

15  395(a).

16     26.    The Note Purchase Agreement (section 9(a)) calls for application of California law.

17                              STATEMENT OF THE FACTS

18  The Promissory Notes

19     27.    On or about March 17, 2017 Plaintiff Mentor Capital and Defendants G FarmaLabs

20  Limited and Does 1 through 50, entered into a Notes Purchase Agreement under which Plaintiff

21  purchased two promissory notes for an aggregate amount of five hundred thousand dollars

22  ($500,000). A true and correct copy of this Notes Purchase Agreement is attached hereto as Exhibit

23  A.

24     28.    One of the two promissory notes purchased under the Notes Purchase Agreement was

25  titled PROMISSORY NOTE For Purchase of Real Estate and was in initial principal face amount of

26  one hundred twenty thousand dollars ($120,000) [Hereafter, "The 120 Note".] A true and correct

27  copy of this 120 Note is attached hereto as Exhibit B.

28     29.    One of the two promissory notes purchased under the Notes Purchase Agreement was

- 4 -

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

titled PROMISSORY NOTE For A Working Capital Loan and was in initial principal face amount of three hundred eighty thousand dollars ($380,000) [Hereafter, "The 380 Note".] A true and correct copy of this 380 Note is attached hereto as Exhibit C.

30.     Plaintiffs hereby accelerate the maturity of the 120 Note and the 380 Note and declare both due and payable immediately in accordance with their terms.

The Addenda

31.     The Parties entered into several addenda, under which the Plaintiffs provided additional funds to the Defendants, and each of them, as is set forth in the following paragraphs.

32.     Attached hereto as Exhibit D is a true and correct copy of an Addendum dated March 17, 2017 under which the agreements set forth above were amended in certain respects.

33.     Attached hereto as Exhibit E is a true and correct copy of Addendum II dated April 28, 2017 under which, among other things, the Plaintiffs loaned an additional $100,000 to the Defendants and the Defendants agreed to make additional payments to Plaintiffs, and guaranty the additional $100,000.

34.     Attached hereto as Exhibit F is a true and correct copy of Addendum III dated June 4, 2017 under which, among other things, the Plaintiffs loaned an additional $100,000 to the Defendants and the Defendants agreed to make additional payments to Plaintiffs, and guaranty the additional $100,000.

35.     Attached hereto as Exhibit G is a true and correct copy of Addendum IV dated September 26, 2017 under which, among other things, the Plaintiffs loaned an additional $100,000 to the Defendants and the Defendants agreed to make additional payments to Plaintiffs, and guaranty the additional $100,000.

36.     Attached hereto as Exhibit H is a true and correct copy of Addendum V dated December 6, 2017 under which, among other things, the Plaintiffs loaned an additional $100,000 to the Defendants and the Defendants agreed to make additional payments to Plaintiffs, and guaranty the additional $100,000.

37.     Attached hereto as Exhibit I is a true and correct copy of Addendum VI dated January 17, 2018 under which, among other things, the Plaintiffs loaned an additional $100,000 to the

VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

1  Defendants and the Defendants agreed to make additional payments to Plaintiffs, and guaranty the
2  additional $100,000.

3      38.    Attached hereto as <u>Exhibit J</u> is a true and correct copy of Addendum VII dated
4  September 7, 2018 under which, among other things, the Plaintiffs loaned an additional $79,000 to
5  the Defendants and the Defendants agreed to make additional payments to Plaintiffs, and guaranty
6  the additional $79,000.

7      39.    Attached hereto as <u>Exhibit K</u> is a true and correct copy of Addendum VIII dated
8  March 4, 2019, under which, among other things, the Plaintiffs loaned an additional $31,000 to the
9  Defendants, the Defendants agreed to make additional payments to Plaintiffs, and guaranty the
10  additional $31,000, and Defendants Goya Ventures and Does 1 through 50 agreed to issue an equity
11  interest to Plaintiffs.

12      40.    The total amount loaned to Defendants by Plaintiffs is $1,110,000.

13      41.    As of March 31, 2019 the amount remaining due, owing, and unpaid under the 380
14  Note (as increased under the Addenda) is $951,843.56.

15      42.    As of March 31, 2019 the amount remaining due, owing, and unpaid under the 120
16  Note is $113,451.47.

17      43.    As of March 31, 2019 the aggregate amount remaining due, owing, and unpaid under
18  both Notes is $1,065,295.03.

19  <u>The Rights Agreement</u>

20      44.    On or about March 17, 2017 Plaintiffs and Defendants entered into a Rights
21  Agreement under which Defendants agreed, among other things, to deliver to Plaintiffs certain
22  financial and other information, and permit inspections, as identified therein. A true and correct copy
23  of this Rights Agreement is attached hereto as <u>Exhibit L</u>. The Rights Agreement has been amended
24  by the parties under the various addenda identified above.

25  <u>The Security Agreement</u>

26      45.    On or about March 17, 2017 Mentor Capital and G FarmaLabs Limited entered into
27  a Security Agreement under which G FarmaLabs Limited, among other things, granted a security
28  interest in substantially all of its property to secure its performance of, "all loans, advances, debts,

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

1 | liabilities and obligations, howsoever arising, owed by [G FarmaLabs Limited] to [Mentor Capital]
2 | or any affiliate of [Mentor Capital] of every kind and description, now existing or hereafter
3 | arising…" A true and correct copy of this Security Agreement is attached hereto as Exhibit M. The
4 | Security Agreement has been amended by the parties under the various addenda identified above.

5 | The Consulting Agreement

6 | 46.     On or about March 17, 2017 Mentor Capital and G FarmaLabs Limited entered into
7 | a Consulting Agreement under which Mentor Capital agreed to provide professional consulting
8 | services in management, business, accounting, and finance.  A true and correct copy of this
9 | Consulting Agreement is attached hereto as Exhibit N.  The Consulting Agreement has also been
10 | amended by the parties under the various addenda identified above.

11 | 47.     Since March 17, 2017, Plaintiff Mentor Capital has provided consulting services to G
12 | FarmaLabs Limited in the areas of management, business, accounting, and finance.

13 | The Equity Purchase and Issuance Agreement

14 | 48.     On or about September 6, 2018 Plaintiff Mentor Capital and Defendants G FarmaLabs
15 | Limited, G FarmaLabs DHS, LLC, GFBrands, Inc., Finka Distribution, Inc., and G FarmaLabs WA,
16 | LLC entered into an Equity Purchase and Issuance Agreement under which those Defendants and
17 | Does 1 through 50 agreed to sell and issue to Mentor Capital an equity interest in each of them and
18 | in each of their affiliates.  A true and correct copy of this Equity Purchase and Issuance Agreement
19 | is attached hereto as Exhibit O.

20 | The Equipment Lease

21 | 49.     On or about January 16, 2018 Plaintiff Mentor Partner I (as "*Lessor*") and Defendants
22 | G FarmaLabs Limited (as "*Lessee*"), GFBrands, Inc. (as "*Guarantor*"), and Does 1 through 50
23 | entered into a Master Equipment Lease Agreement (hereafter the "Lease").  A true and correct copy
24 | of this Lease is attached hereto as Exhibit P.

25 | 50.     Under the Lease, Plaintiff Mentor Partner I leased certain Equipment, as defined
26 | therein, to Lessee, and Lessee promised to make the lease rental payments described therein.

27 | 51.     Attachments to the Lease (included with Exhibit P) included Lease Schedule No. 1
28 | (Exhibit A to the Lease), a Schedule of Equipment (Exhibits B, B-1, and B-2 to the Lease), and a

- 7 -

1    Schedule of Rent Amounts (Exhibit C to the Lease).

2        52.    The Lease was subsequently amended and Lease schedules were associated with the

3    Lease as follows:

4            a.    First Amendment to Lease Schedule No. 1, dated March 5, 2018, attached

5    hereto as Exhibit Q.  Under the First Amendment to Lease Schedule No. 1 additional equipment was

6    leased by Plaintiffs and additional payments were agreed by Defendants.

7            b.    Second Amendment to Lease Schedule No. 1, dated April 4, 2018, attached

8    hereto as Exhibit R.  Under the Second Amendment to Lease Schedule No. 1 additional equipment

9    was leased by Plaintiffs and additional payments were agreed by Defendants.

10           c.    Third Amendment to Lease Schedule No. 1, dated June 5, 2018, attached

11   hereto as Exhibit S.  Under the Third Amendment to Lease Schedule No. 1 additional equipment was

12   leased by Plaintiffs and additional payments were agreed by Defendants.

13           d.    Fourth Amendment to Lease Schedule No. 1, dated September 7, 2018,

14   attached hereto as Exhibit T.  Under the Fourth Amendment to Lease Schedule No. 1 additional

15   equipment was leased by Plaintiffs, an additional Lessee was added, additional guarantees were

16   given by Defendants, and additional payments were agreed by Defendants.

17           e.    Fifth Amendment to Lease Schedule No. 1, dated March 4, 2019, attached

18   hereto as Exhibit U.  Under the Fifth Amendment to Lease Schedule No. 1 the Equipment Schedule

19   was modified and the payments to be made by Defendants were decreased.

20       53.    In Section 20 of the Lease, Defendant GFBrands, "guarantees the performance of

21   Lessee."

22       54.    As of March 31, 2019 the amount remaining due, owing, and unpaid under the Lease

23   is $1,102,958.07.

24   The Guarantees

25       55.    On or about March 17, 2017 Defendants Ata Gonzalez, and Does 1 through 50,

26   entered into a Guaranty with Plaintiff, under which Defendants, as Guarantors, agreed to,

27   "irrevocably and unconditionally guarantee[] to [Plaintiff] the full and punctual payment when

28   due..., and the performance, of all liabilities, agreements and other obligations of [Defendants G

- 8 -
VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

FarmaLabs Limited and Does 1 through 50] to [Plaintiff] under the Note," among other things. A true and correct copy of this Guaranty is attached hereto as Exhibit V.

56. Under the first Addendum, described above, Defendant Nicole Gonzalez agree to be a Co-Guarantor.

57. On or about September 6, 2018 Defendants Nicole Gonzalez, and Does 1 through 50, entered into a Guaranty with Plaintiff, under which Defendants, as Guarantors, agreed to, "irrevocably and unconditionally guarantee[] to [Plaintiff] the full and punctual payment when due…, and the performance, of all liabilities, agreements and other obligations of [Defendants G FarmaLabs Limited and others and Does 1 through 50] to [Plaintiff] under the Note," among other things. A true and correct copy of this Guaranty is attached hereto as Exhibit W.

58. On or about September 6, 2018 Defendants Ata Gonzalez, and Does 1 through 50, entered into a Guaranty with Plaintiff, under which Defendants, as Guarantors, agreed to, "irrevocably and unconditionally guarantee[] to [Plaintiff] the full and punctual payment when due…, and the performance, of all liabilities, agreements and other obligations of [Defendants G FarmaLabs Limited and others and Does 1 through 50] to [Plaintiff] under the Note," among other things. A true and correct copy of this Guaranty is attached hereto as Exhibit X.

59. Subsequent to entering in to the Agreements Defendants, and each of them, refused and failed to perform their obligations under the Agreements and Plaintiffs have no indication that Defendants will ever be able to perform the obligations under the Agreements.

The Failed Stock Credit

60. In or about April, 2019, Plaintiffs discussed with Defendants the possible return by Defendants for cancellation of 288,890 shares of Mentor Capital Common Stock owned by Defendants, in consideration for a credit to the various amounts owed to Plaintiffs by Defendants at $0.45 per share, the then current trading price of Mentor Capital stock, for an aggregate credit of $130,000.50 (the "Stock Credit").

61. As of the date of this Complaint, Defendants have not fully signed or delivered the Stock Credit, and the offer for the Stock Credit is withdrawn hereby.

//

- 9 -

VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

### FIRST CAUSE OF ACTION
(Breach of Contract Against G FarmaLabs Limited and Does 1-50
For Breach of the 120 Note)

62.     Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

63.     Defendants G FarmaLabs Limited and Does 1 through 50 have entered into a contract with Plaintiff Mentor Capital.

64.     Plaintiff Mentor Capital has performed all of its obligations under the 120 Note by transferring funds to Defendants G FarmaLabs Limited and Does 1 through 50.

65.     Defendants G FarmaLabs Limited and Does 1 through 50 have breached the 120 Note by failing to pay amounts due thereunder as and when due, among other things.

66.     Plaintiffs have been proximately damaged in an amount according to proof and in excess of the jurisdictional limits of this court.

### SECOND CAUSE OF ACTION
(Breach of Contract Against G FarmaLabs Limited and Does 1-50
For Breach of the 380 Note)

67.     Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

68.     Defendants G FarmaLabs Limited and Does 1 through 50 have entered into a contract with Plaintiff Mentor Capital.

69.     Plaintiff Mentor Capital has performed all of its obligations under the 380 Note by transferring funds to Defendants G FarmaLabs Limited and Does 1 through 50.

70.     Defendants G FarmaLabs Limited and Does 1 through 50 have breached the 380 Note by failing to pay amounts due thereunder as and when due, among other things.

71.     Plaintiffs have been proximately damaged in an amount according to proof and in excess of the jurisdictional limits of this court.

### THIRD CAUSE OF ACTION
(Breach of Contract Against G FarmaLabs Limited and Does 1-50
For Breach of the Lease)

72.     Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

73.     Defendants G FarmaLabs Limited and Does 1 through 50 have entered into a contract with Plaintiffs.

74.     Plaintiffs have performed their obligations under the Lease by transferring equipment to Defendants G FarmaLabs Limited and Does 1 through 50.

75.     Defendants G FarmaLabs Limited and Does 1 through 50 have breached the Lease by failing to pay amounts due thereunder as and when due, and failing to preserve and protect the leased equipment, among other things.

76.     Plaintiffs have been proximately damaged in an amount according to proof and in excess of the jurisdictional limits of this court.

FOURTH CAUSE OF ACTION
(Breach of Contract Against G FarmaLabs Limited and Does 1-50
For Breach of the Consulting Agreement)

77.     Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

78.     Defendants G FarmaLabs Limited and Does 1 through 50 have entered into a contract with Plaintiff Mentor Capital.

79.     Plaintiff Mentor Capital has performed its obligations under the Consulting Agreement by providing the agreed upon management, business, accounting, and financing consulting services to Defendants G FarmaLabs Limited and Does 1 through 50.

80.     Defendants G FarmaLabs Limited and Does 1 through 50 have breached the Consulting Agreement by failing to pay amounts due thereunder as and when due, among other things.

81.     Plaintiffs have been proximately damaged in an amount according to proof and in excess of the jurisdictional limits of this court.

FIFTH CAUSE OF ACTION
(Breach of Contract Against G FarmaLabs Limited and Does 1-50
For Breach of the Rights Agreement)

82.     Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

83.     Defendants G FarmaLabs Limited and Does 1 through 50 have entered into a contract

VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

1    with Plaintiff Mentor Capital.

2         84.     Plaintiff Mentor Capital has performed all of its obligations under the Rights

3    Agreement by transferring funds to Defendants G FarmaLabs Limited and Does 1 through 50

4    pursuant to the Notes.

5         85.     Defendants G FarmaLabs Limited and Does 1 through 50 have breached the Rights

6    Agreement by failing to timely provide information as required thereunder, among other things.

7         86.     Plaintiffs have been proximately damaged in an amount according to proof and in

8    excess of the jurisdictional limits of this court.

9    

SIXTH CAUSE OF ACTION
(Breach of Contract Against G FarmaLabs Limited and Does 1-50
For Enforcement of the Security Agreement)

10

11         87.     Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs

12    of this Complaint as though fully set forth at this point.

13         88.     Defendants G FarmaLabs Limited and Does 1 through 50 have entered into a contract

14    with Plaintiff Mentor Capital.

15         89.     Plaintiff Mentor Capital has performed all of its obligations under the Security

16    Agreement by transferring funds to Defendants G FarmaLabs Limited and Does 1 through 50

17    pursuant to the Notes.

18         90.     Defendants G FarmaLabs Limited and Does 1 through 50 have breached the Security

19    Agreement by failing and refusing to turn over to Plaintiffs the collateral pledged thereunder, among

20    other things.

21         91.     Plaintiffs have been proximately damaged in an amount according to proof and in

22    excess of the jurisdictional limits of this court.

23    

SEVENTH CAUSE OF ACTION
(Breach of Contract Against Ata Gonzalez and Does 1-50
For Performance of his Guarantees)

24

25         92.     Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs

26    of this Complaint as though fully set forth at this point.

27         93.     Defendants Ata Gonzalez and Does 1 through 50 have entered into a contract with

28    Plaintiffs.

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

94.     Plaintiffs have performed all of their obligations under the Guarantees by, among other things, transferring funds to and leasing equipment to G FarmaLabs Limited and Does 1 through 50.

95.     Defendants Ata Gonzalez and Does 1 through 50 have breached his Guarantees by failing and refusing to perform the obligations of the Maker as promised in his Guarantees, among other things.

96.     Plaintiffs have been proximately damaged in an amount according to proof and in excess of the jurisdictional limits of this court.

EIGHTH CAUSE OF ACTION
(Breach of Contract Against Nicole Gonzalez and Does 1-50
For Performance of her Guarantees)

97.     Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

98.     Defendants Nicole Gonzalez and Does 1 through 50 have entered into contracts with Plaintiffs.

99.     Plaintiffs have performed all of their obligations under the Guarantees by, among other things, transferring funds to and leasing equipment to G FarmaLabs Limited and Does 1 through 50.

100.    Defendants Nicole Gonzalez and Does 1 through 50 have breached her Guarantees by failing and refusing to perform the obligations of the Maker as promised in her Guarantees, among other things.

101.    Plaintiffs have been proximately damaged in an amount according to proof and in excess of the jurisdictional limits of this court.

NINTH CAUSE OF ACTION
(Breach of Contract Against GFBrands and Does 1-50
For Performance of its Guaranty)

102.    Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

103.    Defendants GFBrands and Does 1 through 50 have entered into contracts with Plaintiffs whereby GFBrands and Does 1 through 50 agreed to guarantee the performance of G

- 13 -

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

1  FarmaLabs Limited's of its obligations.

2      104.  Plaintiffs have performed all of their obligations under the contracts by leasing

3  equipment to G FarmaLabs Limited and Does 1 through 50.

4      105.  Defendants GFBrands and Does 1 through 50 have breached their Guarantees by

5  failing and refusing to perform the obligations of the contract obligors, among other things.

6      106.  Plaintiffs have been proximately damaged in an amount according to proof and in

7  excess of the jurisdictional limits of this court.

8  TENTH CAUSE OF ACTION<br>(Breach of Contract Against G FarmaLabs Limited,

9  G FarmaLabs DHS, LLC, GFBrands, Inc., Finka Distribution, Inc.,<br>G FarmaLabs WA, LLC, and Does 1-50

10  For Breach of the Equity Purchase and Issuance Agreement)

11      107.  Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs

12  of this Complaint as though fully set forth at this point.

13      108.  Defendants G FarmaLabs DHS, LLC, GFBrands, Inc., Finka Distribution, Inc., G

14  FarmaLabs WA, LLC, and Does 1-50 have entered into a contract with Plaintiff Mentor Capital.

15      109.  Plaintiff Mentor Capital has performed all of its obligations under the Equity Purchase

16  and Issuance Agreement by, among other things, transferring funds to and leasing equipment to G

17  FarmaLabs Limited and Does 1 through 50.

18      110.  Defendants G FarmaLabs DHS, LLC, GFBrands, Inc., Finka Distribution, Inc., G

19  FarmaLabs WA, LLC, and Does 1-50 have breached the Equity Purchase and Issuance Agreement

20  by failing and refusing to issue and of the equity sold and purchased thereunder, among other things.

21      111.  Plaintiffs have been proximately damaged in an amount according to proof and in

22  excess of the jurisdictional limits of this court.

23  ELEVENTH CAUSE OF ACTION<br>(Breach of Contract Against Goya Ventures and Does 1 through 50

24  For Breach of Addendum VIII)

25      112.  Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs

26  of this Complaint as though fully set forth at this point.

27      113.  Defendants Goya Ventures and Does 1 through 50 have entered into a contract with

28  Plaintiff Mentor Capital.

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

114.    Plaintiff Mentor Capital performed all of its obligations under Addendum VIII paying various obligations of G FarmaLabs Limited.

115.    Defendants Goya Ventures and Does 1-50 have breached Addendum VIII by failing and refusing to issue the equity sold and purchased thereunder, among other things.

116.    Plaintiffs have been proximately damaged in an amount according to proof and in excess of the jurisdictional limits of this court.

TWELFTH CAUSE OF ACTION
(Against all Defendants
for an Injunction)

117.    Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

118.    Defendants have been unable to pay, and have further refused to pay, amounts owed to Plaintiffs under the Agreements.

119.    Plaintiffs are at risk that the equipment they own which was leased to Defendants, and which Defendants have already mishandled, mismanaged, lost, wasted, and put at risk, be further put at risk and not returned to Plaintiffs.

120.    Additionally, Plaintiffs are further at risk that the collateral which the Defendants pledged under the Security Agreement, and which Defendants have already mishandled, mismanaged, lost, wasted, and put at risk, be further put at risk and not delivered to Plaintiffs.

121.    As Defendants have failed to pay, and refuse to pay, amounts owed to Plaintiffs under the Agreements, Plaintiffs will suffer irreparable harm if the equipment leased to Defendants and the collateral are not preserved.

122.    Plaintiffs are entitled to and will seek a permanent, preliminary, and temporary injunction and restraining order preventing Defendants and each of them and their agents, servants, employees, employers and all persons acting in concert with them from, among other things and according to proof:

    a.    Selling, hypothecating, leasing, or otherwise transferring or moving the equipment leased to Defendants under the Lease;

    b.    Using the equipment leased to Defendants under the Lease;

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

       c.      Wasting the equipment leased to Defendants under the Lease;

       d.      Failing to make available to Plaintiffs for recovery and collection by Plaintiffs the equipment leased to Defendants under the Lease;

       e.      Failing to return to Plaintiffs the equipment leased to Defendants under the Lease;

       f.      Selling, hypothecating, leasing, or otherwise transferring or moving the collateral pledged under the Security Agreement;

       g.      Using the collateral pledged under the Security Agreement;

       h.      Wasting the collateral pledged under the Security Agreement;

       i.      Failing to make available to Plaintiffs for recovery and collection by Plaintiffs the collateral pledged under the Security Agreement; and

       j.      Failing to deliver to Plaintiffs the collateral pledged under the Security Agreement.

125.    As Defendants have breached the Agreements under which the equipment was leased and the collateral was pledged, Plaintiffs are likely to succeed on the merits of the underlying claims.

THIRTEENTH CAUSE OF ACTION
(Against all Defendants
For Fraud)

126.    Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

127.    Defendants, and each of them, fraudulently misrepresented and concealed material facts about their operations, including that each Defendant was acting on behalf of and as an agent for, all other Defendants; that Defendants, and each of them, were in compliance with all state laws including all laws related to controlled substances and listed chemicals; and that Defendants, and each of them, could and would be in a position to perform all of their obligations under the Agreements.

128.    Defendants, and each of them, knew the representations made to Plaintiffs were false when each representation was made.

129.    Defendants, and each of them, fraudulently misrepresented and concealed material

facts with the specific purpose of inducing Plaintiffs to transfer funds to, lease equipment to, and provide other services to Defendants.

130.    Plaintiffs justifiably relied upon Defendants' fraudulent material statements which led to harm on the part of Plaintiffs.

131.    The frauds engaged in by Defendants, and each of them, have damaged and injured the Plaintiffs in their business and property.

FOURTEENTH CAUSE OF ACTION
Against all Defendants
for Civil RICO

132.    Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

133.    Defendants, and each of them, engaged in a pattern of racketeering conduct and activity in that, among other things, Defendants and each of them engaged in two or more actions to (i) deal in a controlled substance or listed chemical chargeable under California law and punishable by imprisonment for more than one year and (ii) engage in fraudulent conduct with the specific intent to induce Plaintiffs to transfer funds to, lease equipment to, and provide other services to Defendants while Defendants, and each of them, had no intent of performing their own agreed obligations.

134.    The actions of Defendants, and each of them, have damaged and injured the Plaintiffs in their business and property, and Plaintiffs are entitled to treble damages pursuant to 18 United States Code §1964, as well as costs of suit and reasonable attorney's fees.

FIFTEENTH CAUSE OF ACTION
(Against all Defendants
For an Accounting)

135.    Plaintiffs reallege and incorporate herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

136.    Plaintiffs are entitled to certain financial records under the Rights Agreement.

137.    Plaintiffs are equity holders in each entity Defendant pursuant to the Equity Purchase and Issuance Agreement.

138.    Plaintiffs demand and have demanded an accounting of Defendants and each of them, issuance of certificates or other indicia of ownership of the equity interests sold to Plaintiffs, and

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

payment of any distributed amounts due, but Defendants have failed and refused, and continue to fail and refuse, to issue such ownership interest, render such accounting, or to pay such sum.

139.    The number of shares or equity interests and amount of money due from Defendants and each of them to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of Defendants' issued equity, distributions made, and operations.

SIXTEENTH CAUSE OF ACTION<br>(Against all Defendants<br>For Civil Conspiracy)

140.    Plaintiffs reallege and incorporates herein by this reference the preceding paragraphs of this Complaint as though fully set forth at this point.

141.    Defendants, and each of them, are the agent, affiliate, servant, alter ego, joint venturer, employer, principal, and/or employee of each of the other Defendants, and all actions taken by each of such Defendants were intended to be, and were done in the capacity of and as agent for each of the other Defendants.

142.    While they were still telling Plaintiffs that they were working with Plaintiffs, Defendants, and each of them, formed and intended to operate a conspiracy, agreeing to perform numerous wrongful acts together which caused harm to Plaintiffs, thereby adopting each other's actions and incurring co-equal tort liability for each co-conspirator's acts.

143.    Each Defendant was aware that each other Defendant planned to commit the wrongful actions set forth herein and agreed, whether implicitly or explicitly, that the actions be committed.

144.    The wrongful actions were malicious, oppressive, and fraudulent toward Plaintiffs, and caused considerable damage to Plaintiffs as set forth herein.  Therefore, each Defendant should be held legally responsible to pay for the damages to Plaintiffs caused by each other Defendant.

RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that judgment be entered by this Court in its favor and against Defendants, and each of them jointly and severally, as follows:

1.    For an order requiring Defendants to show cause, if any they have, why they should not be enjoined as set forth herein, preliminarily and during the pendency of this action;

2.    For a temporary restraining order, a preliminary injunction, and a permanent

**VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION**

injunction, as set forth hereinabove.

3.     For an order returning to Plaintiffs their leased equipment.

4.     For an order that Defendants and each of them are required to turn over all pledged collateral to the Plaintiffs.

5.     For an accounting.

6.     For an order that Defendants, and each of them jointly and severally, pay to Plaintiffs the amounts set forth hereinabove.

7.     For an order that Defendants, and each of them jointly and severally, pay to Plaintiffs the maximum legal rate of interest on the amounts set forth hereinabove from the date they received such amount.

8.     For such other monetary damages due to Plaintiffs from Defendants, and each of them jointly and severally, according to proof.

9.     For reasonable attorneys' fees pursuant to the Agreement.

10.    For all costs of suit incurred herein; and,

11.    For such other and further relief as the Court deems just and proper.

**Respectfully submitted,**

**MENTOR CAPITAL, INC.**
**MENTOR PARTNER I, LLC**

**By Their Attorneys,**

Dated: May 23, 2019        **THE CORPORATE LAW GROUP**

By:    _____

Paul Marotta
Megan Jeanne

- 19 -

VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

1

## <u>VERIFICATION</u>

2    The undersigned hereby declares that:

3        1.      I am an officer of Mentor Capital Inc., and of Mentor Partner I, LLC, Plaintiffs in this

4    action, and am authorized to execute this Verification on behalf of each Plaintiff.

5        2.      I have read the foregoing Verified Complaint of Mentor Capital Inc. and of Mentor

6    Partner I, LLC, and know the contents thereof.  The same is true of my own knowledge, except as to

7    those matters which are therein alleged on information and belief, and as to those matters, I believe

8    them to be true.

9        3.      I declare under penalty of perjury under the laws of the State of California that the

10   foregoing is true and correct.

11   Dated:  May 22, 2019

12

13

**Chet Billingsley**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT A

**(The Note Purchase Agreement)**
**(Complaint ¶¶22, 26)**

25
26
27
28



## NOTES PURCHASE AGREEMENT

**THIS NOTES PURCHASE AGREEMENT**, dated as of March 17, 2017 (this "*Agreement*"), is entered into by and between **G FARMALABS LIMITED**, a Nevada corporation (the "*Company*"), and **MENTOR CAPITAL, INC.**, a Delaware corporation, its successors or assigns (the "*Buyer*").

## W I T N E S S E T H:

**WHEREAS**, the Buyer wishes to acquire from the Company, and the Company desires to issue and sell to the Buyer, the Notes (as defined below), upon the terms and subject to the conditions of the Notes, this Agreement, and the other Transaction Documents (as defined below).

**NOW THEREFORE**, in consideration of the premises and the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1.     CERTAIN DEFINITIONS.** As used herein, each of the following terms has the meaning set forth below, unless the context otherwise requires:

"*Affiliate*" means, with respect to a specific Person referred to in the relevant provision, another Person who or which controls or is controlled by or is under common control with such specified Person.

"*Closing Date*" means the date of the closing of the purchase and sale of the Notes as agreed by the Buyer and the Company.

"*Holder*" means the Person holding the Notes.

"*Material Adverse Effect*" means an event or combination of events, which individually or in the aggregate, would reasonably be expected to (a) materially adversely affect the legality, validity or enforceability of the Notes or any of the Transaction Documents, (b) have or result in a material adverse effect on the results of operations, assets, or financial condition of the Company and its subsidiaries, taken as a whole, or (c) adversely impair the Company's ability to perform fully on a timely basis its material obligations under any of the Transaction Documents or the transactions contemplated thereby.

"*Person*" means any living person or any entity, such as, but not necessarily limited to, a corporation, partnership or trust.

"*Transaction Documents*" means this Agreement, the Notes, the Security Agreement (defined below), the Trust Deed, the Guaranty, a Consulting Agreement with Buyer, and all other certificates, documents, agreements, resolutions and instruments delivered to any party under or in connection with this Agreement.

**2.     AGREEMENT TO PURCHASE; PURCHASE PRICE.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

**(The 120 Note)**
**(Complaint ¶¶28, 42, 62-66)**

EXHIBIT

## PROMISSORY NOTE
### For Purchase of Real Estate

**$120,000.00**                                    March 1⁷, 2017

### G FARMALABS LIMITED
### Secured Convertible Promissory Note

**FOR VALUE RECEIVED**, G FarmaLabs Limited, a Nevada corporation (the "***Borrower***"), hereby promises to pay to the order of Mentor Capital, Inc., a Delaware corporation, or its successors or assigns (the "***Lender,***" and together with the Borrower, the "***Parties***"), the principal sum of $120,000.00 together with all accrued and unpaid interest thereon, fees incurred or other amounts owing hereunder, all as set forth below in this Promissory Note for Purchase of Real Estate (this "***Note***"). This Note is issued pursuant to that certain Note Purchase Agreement of substantially even date herewith, entered into by and between the Borrower and the Lender, as the same may be amended from time to time (the "***Purchase Agreement***"). This loan is being made to Borrower at its request and Borrower has represented that the proceeds will be applied toward the purchase of that certain real estate commonly referred to as vacant land located at 1086 South Lincoln Avenue, San Bernardino, California, 92408, in the County of San Bernardino, with Assessor's Parcel Number 0136 421 09 0000, which Borrower has represented it is purchasing for $390,000, or such other substituted property as may be agreed by Lender (the "***Real Estate***"). Defined terms used herein but not otherwise defined shall have the meanings ascribed thereto in the Purchase Agreement.

1. **Principal and Interest Payments**. Interest on the unpaid principal balance of this Note shall accrue at the rate of 7.42% per annum, compounded monthly. The Borrower shall pay to the Lender (i) monthly payments of principal and interest in the amount of $1,107 each, commencing April 15, 2017, and (ii) all remaining amounts due hereunder (estimated to be $93,585 assuming all payments hereunder are timely made) in a payment due on or before April 15, 2022 (the "***Maturity Date***"). In the event that any monthly payment is paid more than ten days late, such payment shall accrue a late fee equal to ten percent (10%) of the amount due. All payments owing hereunder shall be in lawful money of the United States of America delivered to the Lender at the address furnished to the Borrower for that purpose. All payments shall be applied first to (a) costs of collection, if any, then to (b) fees and penalties, if any, then to (c) accrued and unpaid interest, and thereafter to (d) principal. For purposes hereof, the term "***Outstanding Balance***" means the sum of the outstanding principal balance of this Note and any accrued but unpaid interest, collection and enforcement costs, and any other fees or penalties incurred under this Note or as set forth in the Purchase Agreement.

2. **Prepayment by the Borrower**. The Borrower may, upon giving the Lender not less than thirty (30) days written notice (a "***Prepayment Notice***"), pay in cash all or any portion of the Outstanding Balance at any time prior to the Maturity Date.

3. **Security**. This Note is secured by that certain Security Agreement of substantially even date herewith (the "***Security Agreement***") executed by the Borrower in favor of the Lender encumbering certain assets of the Borrower, as more specifically set forth in the Security Agreement, all of the terms and conditions of which are hereby incorporated into and made a part

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

**(The 380 Note)**
**(Complaint ¶¶29, 41, 67-71)**

EXHIBIT

**PROMISSORY NOTE**
**For a Working Capital Loan**

**$380,000.00**
March 1₹ᵀᴴ, 2017

**G FARMALABS LIMITED**
**Secured Convertible Promissory Note**

    **FOR VALUE RECEIVED**, G FarmaLabs Limited, a Nevada corporation (the "**Borrower**"), hereby promises to pay to the order of Mentor Capital, Inc., a Delaware corporation, or its successors or assigns (the "***Lender***," and together with the Borrower, the "***Parties***"), the principal sum of $380,000.00 together with all accrued and unpaid interest thereon, fees incurred or other amounts owing hereunder, all as set forth below in this Promissory Note for Working Capital (this "***Note***"). This Note is issued pursuant to that certain Note Purchase Agreement of substantially even date herewith, entered into by and between the Borrower and the Lender, as the same may be amended from time to time (the "***Purchase Agreement***"). This loan is being made to Borrower at its request and Borrower has represented that the proceeds will be used for working capital. Defined terms used herein but not otherwise defined shall have the meanings ascribed thereto in the Purchase Agreement.

    1.    **Principal and Interest Payments**. Interest on the unpaid principal balance of this Note shall accrue at the rate of 7.42% per annum, compounded monthly. The Borrower shall pay to the Lender (i) monthly payments of principal and interest in the amount of $3,505 each, commencing April 15, 2017, and (ii) all remaining amounts due hereunder (estimated to be $296,352 assuming all payments hereunder are timely made) in a payment due on or before April 15, 2022 (the "***Maturity Date***"). In the event that any monthly payment is paid more than ten days late, such payment shall accrue a late fee equal to ten percent (10%) of the amount due. All payments owing hereunder shall be in lawful money of the United States of America delivered to the Lender at the address furnished to the Borrower for that purpose. All payments shall be applied first to (a) costs of collection, if any, then to (b) fees and penalties, if any, then to (c) accrued and unpaid interest, and thereafter to (d) principal. For purposes hereof, the term "***Outstanding Balance***" means the sum of the outstanding principal balance of this Note and any accrued but unpaid interest, collection and enforcement costs, and any other fees or penalties incurred under this Note or as set forth in the Purchase Agreement.

    2.    **Prepayment by the Borrower**. The Borrower may, upon giving the Lender not less than thirty (30) days written notice (a "***Prepayment Notice***"), pay in cash all or any portion of the Outstanding Balance at any time prior to the Maturity Date.

    3.    **Security**. This Note is secured by that certain Security Agreement of substantially even date herewith (the "***Security Agreement***") executed by the Borrower in favor of the Lender encumbering certain assets of the Borrower, as more specifically set forth in the Security Agreement, all of the terms and conditions of which are hereby incorporated into and made a part of this Note.

    4.    **Guaranty**. Ata Gonzalez guarantees all obligations under this Note pursuant to a guaranty of substantially even date herewith (the "***Guaranty***").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D

**(Addendum [I])**
**(Complaint ¶¶32, 56)**

EXHIBIT



## ADDENDUM

This **ADDENDUM** (the "*Addendum*"), dated and effective as of March **14TH**, 2017, is executed and entered into by and between **Ata Gonzalez** (the "*Guarantor*"), Nicole Gonzalez (the "*Co-Guarantor*"), **Mentor Capital, Inc.** (the "*Investor*") and **G FarmaLabs Limited** (the "*Company*"), taken together the **Parties** or singularly, a **Party.**

## W I T N E S S E T H:

**WHEREAS**, the **Parties** or various of them have agreed to enter into a family of nine other agreements of like date and related subject matter to this **Addendum**; and

**WHEREAS**, in order to induce the **Parties** to enter into the agreements, at the last moment before execution and effectiveness, a small number of last minute changes have been agreed to by the **Parties**;

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each **Party**, the **Parties** hereby agree as follows:

1.      **ACH Payments if Possible:**   [Notes Purchase Agreement: 5(a)(viii)] "The Company shall provide <u>to the extent possible</u> automatic withdrawal ...." *The underlined words are added.*

2.      **Loan OK to Pay-Off Obligation:** [Notes Purchase Agreement: 5(a)(x)(A)] "... with past practice, <u>or to pay-off the debt owed to Mentor</u> without the consent of the Buyer;" *The underlined words are added.*

3.      **Property Sale OK to Pay-Off Obligation:** [Promissory Note for Purchase of Real Estate: 2] "... to the Maturity Date. <u>The property may be sold to pay-off the Promissory Note without the consent of the Lender.</u>" *The underlined words are added.*

4.      **Following State Laws Prevents Default:** [Promissory Note for Purchase of Real Estate: 5(c) & 6(b)] "... any Requirements. If in conflict, <u>full compliance with state law insulates Borrower from default for violation of federal law.</u>" *The underlined words are added.*

5.      **$500,000 vs $100,000 for Default:** [Mentor Capital, Inc. Subscription Agreement: 6(g)] "... an amount in excess of <u>$500,000.00</u>." *The underlined words are added.*

6.      **Calaveras Lawsuit:** [Promissory Note for Purchase of Real Estate: 2(a)] "... the undersigned <u>from the Calaveras lawsuit</u> (each a "Recovery") *The underlined words are added.*

7.      **Nicole Gonzalez is Co-Guarantor:** [Guaranty: Intro] "...is executed and delivered by **Ata Gonzalez <u>and Nicole Gonzalez,</u>** jointly and severally, (the "***<u>Guarantors</u>***") *The underlined words are added.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT E

**(Addendum II)**
**(Complaint ¶33)**

EXHIBIT

### ADDENDUM II

This **ADDENDUM II** (the "*Addendum II*"), dated and effective as of April **28**, 2017, is executed and entered into by and between **Ata Gonzalez** (the "*Guarantor*"), Nicole Gonzalez (the "*Co-Guarantor*"), **Mentor Capital, Inc.** (the "*Investor*") and **G FarmaLabs Limited** (the "*Company*"), taken together the **Parties** or singularly, a **Party.**

### WITNESSETH:

**WHEREAS**, the **Parties** or various of them agreed to enter into a family of nine other agreements effective on March 17, 2017 of related subject matter to this **Addendum II** and wish to globally extend and modify all nine agreements by way of this **Addendum II**;

**WHEREAS**, the **Parties** wish to increase the magnitude of the financing paid in by 20% or $200,000, and in turn with payments, principal and consideration of every sort paid out increased by 20% in the agreements;

**WHEREAS**, the **Parties** recognize that the Purchase of Real Estate and associated security contemplated in the agreements may not occur within a commercially reasonable period of time; and

**WHEREAS**, the **Parties** wish to allow the entire $1,200,000 of the increased agreements to be utilized by the **Company** for valid business purposes in a timely fashion, and secured for the **Investor**;

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each **Party**, the **Parties** hereby agree as follows:

1.    **$100,000 Additional Cash to be Paid to Company:** **Investor** will deliver a check for an additional $100,000 to the **Company** on Addendum II execution.

2.    **$100,000 / 20% Additional Repayment to Investor:** [Promissory Note for a Working Capital Loan: Number Modifications Throughout] Principal: "$480,000" will replace "$380,000;" Remaining Amount: "$374,838" will replace "$296,352;" Payments: "$4,427" will replace "$3,505;" [Consulting Agreement: 3.] "$1,680" will replace "$1,400;" [Rights Agreement:2(b)] "1.8%" will replace "$1.5%;" [Subscription Agreement: 2(b)] "$480,000" will replace "$380,000;"    [Security Agreement] "$600,000" will replace "$500,000;" [Notes Purchase Agreement:2(a)] "$600,000" will replace "$500,000." *The underlined words are added replacing former amounts.*

**MONTHLY $7,214 PAYMENT SUMMARY:** Total combined payment due each 15th of the month from **Company** to **Investor** increases to $7,214 from $6,014. ($488 overpayment credit from April 15, 2017 to be applied to May 15, 2017 payment leaving **$6,726 due May 15, 2017.**)

3.    **$100,000 Additional MNTR Stock to be Paid to Company:** [Subscription Agreement] …subscribing herby on March 17, 2017 for a) 222,223, plus on April 25, 2017 for

b) 66,667 shares of Company Common Stock...at a price of a) $2.25 per share, and b) $1.50 per share, for an aggregate purchase price of a) $500,000 plus b) $100,000 or $600,000 in total... *The underlined words are added.*

4.      **Extension of Use:** [Promissory Note: First Paragraph (near end)] "...(the "**Real Estate**"). Until a substituted property is agreed to by Lender, the Borrower may utilize the principal sum of $120,000 for other corporate projects and purposes. *The underlined words are added.*

5.      **Extension of Guarantee:** [Guarantee] "...face amount of $480,000 and $120,000" will replace "$380,000;" and "Note" will be interpreted to include both Notes throughout the Guarantee. *The underlined words are added replacing former amounts.*

**IN WITNESS WHEREOF**, the **Parties** have caused this **Addendum II** to be executed and delivered as of the date appearing in the introductory paragraph of this **Addendum II**.

Ata Gonzalez, an **Individual**

Nicole Gonzalez, an **Individual**

**MENTOR CAPITAL, INC.,**
a **Delaware corporation**

By:

**Chet Billingsley, its Chief Executive Officer**

**G FARMALABS LIMITED,**
a **Nevada corporation**

By:

**Cristina Gonzalez, its President**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT F

**(Addendum III)**
**(Complaint ¶34)**

## ADDENDUM III

This **ADDENDUM III** (the "*Addendum III*"), dated and effective as of June _4_, 2017, is executed and entered into by and between **Ata Gonzalez** (the "*Guarantor*"), **Nicole Gonzalez** (the "*Co-Guarantor*"), **Mentor Capital, Inc.**, a Delaware corporation (the "*Investor*") and **G FarmaLabs Limited**, a Nevada corporation (the "*Company*"); collectively the **Parties** or singularly, a **Party**.

### W I T N E S S E T H:

**WHEREAS**, the **Parties,** or various of them, agreed to enter into a family of nine other agreements, including a certain Notes Purchase Agreement, Real Estate Purchase Note, Working Capital Note, Security Agreement, Trust Deed, Guaranty, Consulting Agreement, Rights Agreement and Subscription Agreement, all effective March 17, 2017, as amended by a certain Addendum I effective March 17, 2017, and as further amended by certain Addendum II effective April 28, 2017 (collectively, the **Agreements**") of related subject matter to this **Addendum III**; and

**WHEREAS**, the **Parties** wish to increase the magnitude of the cash financing paid in by $100,000, which equals 16.67% (i.e. $100,000 / $600,000) and in turn with payments, principal, and consideration of every sort paid out on the cash consideration increased by 16.67% in the Agreements; and

**WHEREAS**, the **Parties** wish to allow the entire $1,300,000 including the $700,000 of cash consideration of the increased Agreements to be utilized by the **Company** for valid business purposes in a timely fashion, and secured for the **Investor**; and

**WHEREAS**, the **Company,** notwithstanding the forgoing, in lieu of increasing consulting fees 16.67%, wishes to provide **Investor** with certain website support and marketing services, as it deems appropriate and in its best judgment; including assistance in conceptualizing a new logo and website design for **Investor** and to co-host with and display the **Investor's** logo at a certain NCIA 4th Annual Cannabis Business Summit & Expo at the Oakland Marriott City Center in Oakland, California on or around June 12-14, 2017 on and in conjunction with the **Company's** marketing materials; and

**WHEREAS**, the **Parties** wish to globally extend and modify the Agreements by way of this **Addendum III**.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each **Party**, the **Parties** hereby agree as follows:

1.    **$100,000 Additional Cash to be Paid to Company: Investor** will deliver a check for an additional $100,000 to the **Company** on the date of that this **Addendum III** is fully executed along with a certain Acknowledgment of Receipt of payment by the president of the **Company**.

2.    **$100,000 / 16.67% Additional Repayment to Investor:** [Promissory Note for a Working Capital Loan: Number Modifications Throughout] Principal: "$580,000" will replace "$480,000;" Remaining Amount: "$454,620" will replace "$374,838;" Payments: "$5,350" will

1

replace "$4,427;" [Consulting Agreement: 3.] "$1,680" will remain unchanged at "$1,680;" [Rights Agreement: 2(b)] "2.1%" will replace "$1.8%;" [Subscription Agreement: 2(b)] "$580,000" will replace "$480,000;" [Security Agreement] "$700,000" will replace "$600,000;" [Notes Purchase Agreement:2(a)] "$700,000" will replace "$600,000." *The underlined words are added replacing former amounts.*

**MONTHLY $8,137 PAYMENT SUMMARY:** Total combined payment due each 15th of the month from **Company** to **Investor** increases to **$8,137** from $7,214; meaning that **$8,137** is due on **July 15, 2017** and on the 15th of each month thereafter until the full balance is paid in full which shall be no later than April 15, 2022.

3.    **Extension of Guarantee:** [Guarantee] "…face amount of $580,000 and $120,000" will replace "$480,000 and $120,000;" and "Note" will be interpreted to include both Notes throughout the Guarantee. *The underlined words are added replacing former amounts.*

4.    **Marketing by Company for the Investor:** The **Company** will provide **Investor** with certain logo design, website support and marketing services, as **Company** deems appropriate and in its best judgment; including assistance in conceptualizing a logo and new website design for **Investor** and co-hosting with and displaying the **Investor's** logo at a certain NCIA 4th Annual Cannabis Business Summit & Expo at the Oakland Marriott City Center in Oakland, California on or around June 12-14, 2017 on and in conjunction with the **Company's** marketing materials.

5.    **Full Force and Effect; Inconsistent Terms**. Except as expressly set forth in this **Addendum III**, the Agreements are otherwise unmodified, shall remain in full force and effect as incorporated and restated herein as if fully set forth at length. Further, the **Parties** acknowledge that this **Addendum III** incorporates and is subject to the applicable terms and conditions set forth in the Agreements as if said terms and conditions were set forth at length herein; provided, however, in the event of any inconsistencies between the Agreements and this **Addendum III**, the terms of this **Addendum III** shall control.

**IN WITNESS WHEREOF**, the **Parties** have caused this **Addendum III** to be executed and delivered as of the date appearing in the introductory paragraph of this **Addendum III**.

By: _____

Ata Gonzalez, an Individual

**G FARMALABS LIMITED,**
a Nevada corporation

By: _____

Cristina Gonzalez, its President

By: _____

Nicole Gonzalez, an Individual

**MENTOR CAPITAL, INC.,**
a Delaware corporation

By: _____

Chet Billingsley, its CEO

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT G

**(Addendum IV)**
**(Complaint ¶35)**

EXHIBIT



**ADDENDUM IV**

This **ADDENDUM IV** (the "*Addendum IV*"), dated and effective as of September 26, 2017, is executed and entered into by and between **Ata Gonzalez** (the "*Guarantor*"), **Nicole Gonzalez** (the "*Co-Guarantor*"), **Mentor Capital, Inc.**, a Delaware corporation (the "*Investor*") and **G FarmaLabs Limited**, a Nevada corporation (the "*Company*"); collectively the **Parties** or singularly, a **Party**.

**W I T N E S S E T H :**

**WHEREAS**, the **Parties,** or various of them, agreed to enter into a family of twelve other agreements, including a certain Notes Purchase Agreement, Real Estate Purchase Note, Working Capital Note, Security Agreement, Trust Deed, Guaranty, Consulting Agreement, Rights Agreement and Subscription Agreement, all effective March 17, 2017, as amended by a certain Addendum I effective March 17, 2017, as amended by certain Addendum II effective April 28, 2017, and as further amended by that certain Addendum III effective June 4, 2017 (collectively, the **Agreements**") of related subject matter to this **Addendum IV**; and

**WHEREAS**, the **Parties** wish to increase the magnitude of the cash financing paid in by $100,000, which equals 14.29% (i.e. $100,000 / $700,000) and in turn with payments, principal, and consideration of every sort paid out on the cash consideration increased by 14.29% in the Loan Agreements and 16.67% in the Consulting Agreement; and

**WHEREAS**, the **Parties** wish to allow the entire $1,400,000 including the $800,000 of cash consideration of the increased Agreements to be utilized by the **Company** for valid business purposes in a timely fashion, and secured for the **Investor**; and

**WHEREAS**, the **Parties** wish to globally extend and modify the Agreements by way of this **Addendum IV**.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each **Party**, the **Parties** hereby agree as follows:

1.    **$100,000 Additional Cash to be Paid to Company: Investor** will deliver a check for an additional $100,000 to the **Company** on the date of that this **Addendum IV** is fully executed along with a certain Acknowledgment of Receipt of payment by the president of the **Company**.

2.    **$100,000 / 14.29% Additional Repayment to Investor:** [Promissory Note for a Working Capital Loan: Number Modifications Throughout] Principal: "<u>$680,000</u>" will replace "$580,000;" Remaining Amount: "<u>$533,912</u>" will replace "$454,620;" Payments: "<u>$6,272</u>" will replace "$5,350;" [Consulting Agreement: 3.] "<u>$1,960</u>" will replace at "$1,680;" (consulting only increases 16.67%) [Rights Agreement: 2(b)] "<u>2.4%</u>" will replace "$2.1%;" [Subscription Agreement: 2(b)] "<u>$680,000</u>" will replace "$580,000;" [Security Agreement] "<u>$800,000</u>" will replace "$700,000;" [Notes Purchase Agreement:2(a)] "<u>$800,000</u>" will replace "$700,000." *The underlined words are added replacing former amounts.*

**MONTHLY $9,339 PAYMENT SUMMARY:** Total combined payment due each 15th of the month from **Company** to **Investor** increases to **$9,339** from $8,137; meaning that **$9,339** is due

l

on **November 15, 2017** and on the 15th of each month thereafter until the full balance is paid in full which shall be no later than April 15, 2022.

    3.    **Extension of Guarantee:** [Guarantee] "…face amount of <u>$680,000 and $120,000</u>" will replace "$580,000 and $120,000;" and "Note" will be interpreted to include both Notes throughout the Guarantee. *The underlined words are added replacing former amounts.*

    4.    **Full Force and Effect; Inconsistent Terms**.   Except as expressly set forth in this **Addendum IV**, the Agreements are otherwise unmodified, shall remain in full force and effect as incorporated and restated herein as if fully set forth at length. Further, the **Parties** acknowledge that this **Addendum IV** incorporates and is subject to the applicable terms and conditions set forth in the Agreements as if said terms and conditions were set forth at length herein; provided, however, in the event of any inconsistencies between the Agreements and this **Addendum IV**, the terms of this **Addendum IV** shall control.

    **IN WITNESS WHEREOF**, the **Parties** have caused this **Addendum IV** to be executed and delivered as of the date appearing in the introductory paragraph of this **Addendum IV**.

By: _____
    Ata Gonzalez, an Individual

    **G FARMALABS LIMITED,**
    a Nevada corporation

By: _____
    Cristina Gonzalez, its President

By: _____
    Nicole Gonzalez, an Individual

    **MENTOR CAPITAL, INC.,**
    a Delaware corporation

By: _____
    Chet Billingsley, its CEO       9/26/2017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT H

**(Addendum V)**
**(Complaint ¶36)**

EXHIBIT

## ADDENDUM V

This **ADDENDUM V** (the "*Addendum V*"), dated and effective as of December 6, 2017, is executed and entered into by and between **Ata Gonzalez** (the "*Guarantor*"), **Nicole Gonzalez** (the "*Co-Guarantor*"), **Mentor Capital, Inc.**, a Delaware corporation (the "*Investor*") and **G FarmaLabs Limited**, a Nevada corporation (the "*Company*"); collectively the **Parties** or singularly, a **Party.**

## W I T N E S S E T H :

**WHEREAS,** the **Parties,** or various of them, agreed to enter into a family of twelve other agreements, including a certain Notes Purchase Agreement, Real Estate Purchase Note, Working Capital Note, Security Agreement, Trust Deed, Guaranty, Consulting Agreement, Rights Agreement and Subscription Agreement, all effective March 17, 2017, as amended by a certain Addendum I effective March 17, 2017, as amended by certain Addendum II effective April 28, 2017, as amended by that certain Addendum III effective June 4, 2017, and as further amended by that certain Addendum IV effective September 26, 2017 (collectively, the **Agreements**") of related subject matter to this **Addendum V**; and

**WHEREAS,** the **Parties** wish to increase the magnitude of the cash financing paid in by $100,000, which equals 12.50% (i.e. $100,000 / $800,000) and in turn with payments, principal, and consideration of every sort paid out on the cash consideration increased by 12.50% in the Loan Agreements and 14.29% in the Consulting Agreement; and

**WHEREAS,** the **Parties** wish to allow the entire $1,500,000 including the $900,000 of cash consideration of the increased Agreements to be utilized by the **Company** for valid business purposes in a timely fashion, and secured for the **Investor**; and

**WHEREAS,** the **Parties** wish to globally extend and modify the Agreements by way of this **Addendum V**.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each **Party**, the **Parties** hereby agree as follows:

1.      **$100,000 Additional Cash to be Paid to Company: Investor** will deliver a check for an additional $100,000 to the **Company** on the date of that this **Addendum V** is fully executed along with a certain Acknowledgment of Receipt of payment by the president of the **Company**.

2.      **$100,000 / 12.50% Additional Repayment to Investor:** [Promissory Note for a Working Capital Loan: Number Modifications Throughout] Principal: "$780,000" will replace "$680,000;" Remaining Amount: "$618,876" will replace "$533,912;" Payments: "$8,301" will replace "$6,272;" [Consulting Agreement: 3.] "$2,240" will replace at "$1,960;" (consulting only increases 14.29%) [Rights Agreement: 2(b)] "2.7%" will replace "$2.4%;" [Subscription Agreement: 2(b)] "$780,000" will replace "$680,000;" [Security Agreement] "$900,000" will replace "$800,000;" [Notes Purchase Agreement:2(a)] "$900,000" will replace "$800,000." *The underlined words are added replacing former amounts.*

**MONTHLY $10,541 PAYMENT SUMMARY:** Total combined payment due each 15th of the

1

month from **Company** to **Investor** increases to **$10,541** from $9,339; meaning that **$10,541** is due on **January 15, 2018** and on the 15th of each month thereafter until the full balance is paid in full which shall be no later than April 15, 2022.

3.      **Extension of Guarantee:** [Guarantee] "…face amount of $780,000 and $120,000" will replace "$680,000 and $120,000;" and "Note" will be interpreted to include both Notes throughout the Guarantee. *The underlined words are added replacing former amounts.*

4.      **Full Force and Effect; Inconsistent Terms**.   Except as expressly set forth in this **Addendum V**, the Agreements are otherwise unmodified, shall remain in full force and effect as incorporated and restated herein as if fully set forth at length. Further, the **Parties** acknowledge that this **Addendum V** incorporates and is subject to the applicable terms and conditions set forth in the Agreements as if said terms and conditions were set forth at length herein; provided, however, in the event of any inconsistencies between the Agreements and this **Addendum V**, the terms of this **Addendum V** shall control.

**IN WITNESS WHEREOF**, the **Parties** have caused this **Addendum V** to be executed and delivered as of the date appearing in the introductory paragraph of this **Addendum V**.

By: _____
Ata Gonzalez, an Individual

By: _____
Nicole Gonzalez, an Individual

**G FARMALABS LIMITED,**
a Nevada corporation

**MENTOR CAPITAL, INC.,**
a Delaware corporation

By: _____
Cristina Gonzalez, its President

By: _____
Chet Billingsley, its CEO

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT I

**(Addendum VI)**
**(Complaint ¶37)**

## ADDENDUM VI

This **ADDENDUM VI** (the "*Addendum VI*"), dated and effective as of January 17, 2018, is executed and entered into by and between **Ata Gonzalez** (the "*Guarantor*"), **Nicole Gonzalez** (the "*Co-Guarantor*"), **Mentor Capital, Inc.**, a Delaware corporation (the "*Investor*") and **G FarmaLabs Limited**, a Nevada corporation (the "*Company*"); collectively the **Parties** or singularly, a **Party.**

### W I T N E S S E T H:

**WHEREAS**, the **Parties,** or various of them, agreed to enter into a family of fourteen other agreements, including a certain Notes Purchase Agreement, Real Estate Purchase Note, Working Capital Note, Security Agreement, Trust Deed, Guaranty, Consulting Agreement, Rights Agreement and Subscription Agreement, all effective March 17, 2017, as amended by a certain Addendum I effective March 17, 2017, as amended by certain Addendum II effective April 28, 2017, as amended by that certain Addendum III effective June 4, 2017, as amended by that certain Addendum IV effective September 26, 2017, and as further amended by that certain Addendum V effective December 6, 2017 (collectively, the **Agreements**") of related subject matter to this **Addendum VI**; and

**WHEREAS**, the **Parties** wish to increase the magnitude of the cash financing paid in by $100,000, which equals 11.11% (i.e. $100,000 / $900,000) and in turn with payments, principal, and consideration of every sort paid out on the cash consideration increased by 11.11% in the Loan Agreements and 12.50% in the Consulting Agreement; and

**WHEREAS**, the **Parties** wish to allow the entire $1,600,000 including the $1,000,000 of cash consideration of the increased Agreements to be utilized by the **Company** for valid business purposes in a timely fashion, and secured for the **Investor**; and

**WHEREAS**, the **Parties** wish to globally extend and modify the Agreements by way of this **Addendum VI**.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each **Party**, the **Parties** hereby agree as follows:

1.    **$100,000 Additional Cash to be Paid to Company:** **Investor** will deliver a check for an additional $100,000 to the **Company** on the date of that this **Addendum VI** is fully executed along with a certain Acknowledgment of Receipt of payment by the president of the **Company**.

2.    **$100,000 / 11.11% Additional Repayment to Investor:** [Promissory Note for a Working Capital Loan: Number Modifications Throughout] Principal: "$880,000" will replace "$780,000;" Remaining Amount: "$703,874" will replace "$618,876;" Payments: "$9,223" will replace "$8,301;" [Consulting Agreement: 3.] "$2,520" will replace at "$2,240;" (consulting only increases 12.50%) [Rights Agreement: 2(b)] "3.0%" will replace "$2.7%;" [Subscription Agreement: 2(b)] "$880,000" will replace "$780,000;" [Security Agreement] "$1,000,000" will replace "$900,000;" [Notes Purchase Agreement:2(a)] "$1,000,000" will replace "$900,000." *The underlined words are added replacing former amounts.*

**MONTHLY $11,743 PAYMENT SUMMARY:** Total combined payment due each 15th of the month from **Company** to **Investor** increases to **$11,743** from $10,541; meaning that **$11,743** is due on **March 15, 2018** and on the 15th of each month thereafter until the full balance is paid in full which shall be no later than April 15, 2022.

3.    **Extension of Guarantee:** [Guarantee] "…face amount of $880,000 and $120,000" will replace "$780,000 and $120,000;" and "Note" will be interpreted to include both Notes throughout the Guarantee. *The underlined words are added replacing former amounts.*

4.    **Full Force and Effect; Inconsistent Terms.** Except as expressly set forth in this **Addendum VI**, the Agreements are otherwise unmodified, shall remain in full force and effect as incorporated and restated herein as if fully set forth at length. Further, the **Parties** acknowledge that this **Addendum VI** incorporates and is subject to the applicable terms and conditions set forth in the Agreements as if said terms and conditions were set forth at length herein; provided, however, in the event of any inconsistencies between the Agreements and this **Addendum VI**, the terms of this **Addendum VI** shall control.

**IN WITNESS WHEREOF**, the **Parties** have caused this **Addendum VI** to be executed and delivered as of the date appearing in the introductory paragraph of this **Addendum VI**.

By: _____

Ata Gonzalez, an Individual

**G FARMALABS LIMITED,**
a Nevada corporation

By: _____

Cristina Gonzalez, its President

By: _____

Nicole Gonzalez, an Individual

**MENTOR CAPITAL, INC.,**
a Delaware corporation

By: _____

Chet Billingsley, its CEO

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT J

**(Addendum VII)**
**(Complaint ¶38)**

## ADDENDUM VII

This **ADDENDUM VII** (the "*Addendum VII*"), dated and effective as of **September 7, 2018**, is executed and entered into by and between **Ata Gonzalez** (the "*Guarantor*"), **Nicole Gonzalez** (the "*Co-Guarantor*"), **Mentor Capital, Inc.**, a Delaware corporation (the "*Investor*") and **G FarmaLabs Limited**, a Nevada corporation (the "*Company*"); collectively the **Parties** or singularly, a **Party**.

## WITNESSETH:

**WHEREAS**, the **Parties**, or various of them, agreed to enter into a family of fourteen other agreements, including a certain Notes Purchase Agreement, Real Estate Purchase Note, Working Capital Note, Security Agreement, Trust Deed, Guaranty, Consulting Agreement, Rights Agreement and Subscription Agreement, all effective March 17, 2017, as amended by a certain Addendum I effective March 17, 2017, as amended by certain Addendum II effective April 28, 2017, as amended by that certain Addendum III effective June 4, 2017, as amended by that certain Addendum IV effective September 26, 2017, as amended by that certain Addendum V effective December 6, 2017, and as further amended by that certain Addendum VI dated January 17, 2018, (collectively, the **Agreements**") of related subject matter to this **Addendum VII**; and

**WHEREAS**, the Parties have concurrently contemplated approximately $250,000 in new financing in (i) a separately documented $171,135.44 leased equipment financing, plus (ii) this $79,000 cash financing.

**WHEREAS**, the **Parties** wish to increase the magnitude of the cash financing paid in by $79,000, which equals 7.9% (i.e., $79,000 / $1,000,000) and in turn with payments, principal, and consideration of every sort paid out on the cash consideration increased by 7.9% in the Loan Agreements and 8.77% in the Consulting Agreement; and

**WHEREAS**, the Parties wish to allow the entire $1,679,000 including the $1,079,000 of cash consideration of the increased Agreements to be utilized by the **Company** for valid business purposes in a timely fashion, and secured for the **Investor**;

**WHEREAS**, the **Parties** wish to accommodate the industry practice of creating multiple entities to work in multiple jurisdictions and by separated function to facilitate local residency, local permitting, applicable regulation and to not cross state lines, and to allow for the easier application of funding, equipment and to provide related security across these multiple entities, and

**WHEREAS**, the **Parties** wish to globally extend and modify the Agreements by way of this **Addendum VII**.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each **Party**, the **Parties** hereby agree as follows:

1. **$79,000 Additional Cash to be Paid to Company: Investor** will release funds of an additional $79,000 to the **Company** on the date that this **Addendum VII** is fully executed. Mentor Partner I, LLC, a California limited liability company ("**MPI**") will act as a disbursement agent for the funds by the payment of checks at the direction of the **Company** to pay obligations of the **Company**, generally as previously outlined.

2. **$79,000 / 7.9% Additional Repayment to Investor:** [Promissory Note for a Working Capital Loan: Number Modifications Throughout] Principal: "$959,000" will replace "$880,000;" Remaining Amount: "$866,775" will replace "$798,324;" Payments: "$9,953" will replace "$9,223;" [Consulting Agreement: 3.] "$2,741" will replace at "$2,520;" (consulting only increases 8.77%) [Rights Agreement: 2(b)] "0.0%" will replace "3.0%;" [Subscription Agreement: 2(b)] "$959,000" will replace "$880,000;" [Security Agreement] "$1,079,000" will replace "$1,000,000;" [Notes Purchase Agreement:2(a)] "$1,079,000" will replace "$1,000,000." *The underlined words are added replacing former amounts.*

**MONTHLY $12,694 PAYMENT SUMMARY:** Total combined payment due each 15th of the month from Company to Investor increases to $12,694 from $11,743; meaning that $12,694 is due on **October 15, 2018**, and the 15th of each month thereafter until the full balance is paid in

full which shall be no later than April 15, 2022, on the occurrence of a balloon payment for the Remaining Amount plus any other unpaid balance remaining unpaid at that time.

3. **Extension of Guarantee:** [Guarantee] "...face amount of $959,000 and $120,000" will replace "$880,000 and $120,000." *The underlined words are added replacing former amounts.*

4. **3.75% Immediate Interest:** A separate Mentor Capital, Inc. Equity Purchase and Issuance Agreement is prepared concurrently with this Addendum VII.

5. **January 1, 2020 Excess Distribution Participation:** [Rights Agreement: 4(e) ] Starting January 1, 2020, until such time as G Farma goes public, then if Ata & Nicole Gonzalez each take out salary in any way that is greater than $5,000 per week each from all affiliated entities (e.g., including salary, bonus, loans, rent subsidy, car lease, advances, dividends not otherwise shared through the 3.75%, etc.) then Mentor Capital will receive an amount equal to 3.75% of such excess distribution on a monthly basis paid on the 15th of the following month. *This Section 4(e) is added to the Rights Agreement.*

6. **Unfettered Information:** [Rights Agreement: 3(e)] Notwithstanding the foregoing, beginning October 15th, 2018, Mentor Capital, Inc. will have unfettered and cooperative access on 72-hour notice to the corporate books and records and accounting of the "Company" as defined in the Mentor Capital, Inc. Equity Purchase and Issuance Agreement ("G Farma Companies"). That is, anything Mentor Capital wishes to see, know, copy, take away copies of and retain, discuss or look into from the G Farma Companies is open to Mentor Capital personnel to have. The G Farma Companies and any G Farma Company personnel that are requested to assist in this effort will help expeditiously guide Mentor Capital personnel to that information. Mentor Capital intends to visit G Farma Companies, as a minimum, once each quarter to inspect accounting and records to support Mentor's 10-K/Q process, but may visit and inspect as often and long as needed to obtain any information it needs. Beginning October 15th, 2018 and continuing quarterly each 15th day of October, January, April, and July the Company will provide GAAP compliant financials for the previous fiscal quarter, including at least income statement and balance sheet to the Purchaser covering all Affiliate companies ("Financials"). Also, each 15th day of October, January, April and July the Company will identifying new deliveries of Purchaser equipment to Company and provide to the Purchaser a list of all equipment leased to Company and its physical location by Purchaser inventory tag number and facilitate an audit of the equipment inventory to the extent requested by Purchaser ("Leased Equipment Inventory"). The first Leased Equipment Inventory will be prepared by Purchaser in the support of the Company for equipment inspection between October 15th and November 15th, 2018. Mentor Capital, Inc will keep and treat such information it obtains with the same level of confidentiality it treats its own undisclosed material information. *This Section 3(e) is added to the Rights Agreement.*

7. **Full Force and Effect; Inconsistent Terms.** Except as expressly set forth in this **Addendum VII,** the Agreements are otherwise unmodified, shall remain in full force and effect as incorporated and restated herein as if fully set forth at length. For clarity, wherever the Guaranty of March 17, 2017 is inconsistent with the Guaranty executed concurrently with this **Addendum VII,** the more recent Guaranty will govern. Further, the **Parties** acknowledge that this **Addendum VII** incorporates and is subject to the applicable terms and conditions set forth in the Agreements as if said terms and conditions were set forth at length herein; provided, however, in the event of any inconsistencies between the Agreements and this **Addendum VII,** the terms of this **Addendum VII** shall control.

**IN WITNESS WHEREOF,** the **Parties** have caused this Addendum VII to be executed and delivered as of the date appearing in the introductory paragraph of this Addendum VII.

By: _____

Ata Gonzalez, an Individual

By: _____

Nicole Gonzalez, an Individual

**G FARMALABS LIMITED,**

a Nevada corporation

By: _____

Cristina Gonzalez, its President

**G FARMABRANDS, Inc.**

a Nevada corporation

By: _____

Cristina Gonzalez, its President

**Mentor Partner I, LLC,**

a California, limited liability company

By: _____

Chet Billingsley, its sole Manager

**MENTOR CAPITAL, INC.,**

a Delaware corporation

By: _____

Chet Billingsley, its CEO

The following section is from page 2 of the Rights Agreement and is provided for ease of reference only:

**3. INFORMATION RIGHTS.** The Company shall promptly deliver to Investor the following:

**(a) Audit.** Such information, documentation, and inspections as are necessary or desirable for Investor's auditors to review in connection with their review or audit of Investor's books and accounts;

**(b) Other Information.** Such other information relating to the financial condition, business, prospects, or corporate affairs of the Company related to the Purchase Agreement or the Notes as Investor may from time to time reasonably request; *provided, however,* that the Company shall not be obligated under this Section 3(b) to provide information (i) that the Company reasonably determines in good faith to be a trade secret or confidential information (unless covered by an enforceable confidentiality agreement, in a form acceptable to the Company); or (ii) the disclosure of which would adversely affect the attorney-client privilege between the Company and its counsel.

**(c) Inspection.** The Company shall permit Investor, at such Investor's expense, to visit and inspect the Company's properties.

**(d) Confidentiality.** Investor agrees that Investor will keep confidential and will not disclose, divulge, or use for any purpose (other than to monitor its loans and the Company's performance in repaying its obligations to the Investor) any confidential information obtained from the Company pursuant to the terms of trust Agreement unless such confidential information (a) is known or becomes known to the public in general (other than as a result of a breach of this paragraph by Investor), (b) is or has been independently developed or conceived by the Investor without use of the Company's confidential information, or (c) is or has been made known or disclosed to the Investor by a third party without a breach of any obligation of confidentiality such third party may have to the Company; *provided, however,* that an Investor may disclose confidential information (i) to its attorneys, accountants, consultants, and other professionals to the extent necessary to obtain their services in connection with monitoring its loans to the Company; ( ii) to any existing or prospective Affiliate, partner, member, stockholder, or wholly owned subsidiary of such Investor in the ordinary course of business, *provided* that such Investor informs such Person that such information is confidential and directs such Person to maintain the confidentiality of such information; or (iii) as may

otherwise be required by law, *provided* that the Investor promptly notifies the Company of such
disclosure and takes reasonable steps to minimize the extent of any such required disclosure.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT K

**(Addendum VIII)**
**(Complaint ¶¶39, 112-116)**

EXHIBIT

## ADDENDUM VIII

This **ADDENDUM VIII** (the "*Addendum VIII*"), dated and effective as of **March 4, 2019**, is executed and entered into by and between **Ata Gonzalez** (the "*Guarantor*"), **Nicole Gonzalez** (the "*Co-Guarantor*"), **Mentor Capital, Inc.**, a Delaware corporation (the "*Investor*") and **G FarmaLabs Limited**, a Nevada corporation (the "*Company*"); collectively the **Parties** or singularly, a **Party**.

## W I T N E S S E T H :

**WHEREAS**, the **Parties**, or various of them, agreed to enter into a family of fourteen other agreements, including a certain Notes Purchase Agreement, Real Estate Purchase Note, Working Capital Note, Security Agreement, Trust Deed, Guaranty, Consulting Agreement, Rights Agreement and Subscription Agreement, all effective March 17, 2017, as amended by that certain Addendum I effective March 17, 2017, as amended by that certain Addendum II effective April 28, 2017, as amended by that certain Addendum III effective June 4, 2017, as amended by that certain Addendum IV effective September 26, 2017, as amended by that certain Addendum V effective December 6, 2017, as amended by that certain Addendum VI dated January 17, 2018, and as further amended by that certain Addendum VII effective September 7, 2018; which included a certain Equity Purchase Agreement and Guarantees all effective September 6, 2018, (collectively, the **Agreements**") of related subject matter to this **Addendum VIII**; and

**WHEREAS**, the **Parties** wish to increase the magnitude of the cash financing paid in by $31,000, which equals 2.89% (i.e., $31,000 / $1,079,000) and in turn with payments, principal, and consideration of every sort paid out on the cash consideration increased by 2.87% in the Loan Agreements and 3.17% in the Consulting Agreement; and

**WHEREAS**, the **Parties** wish to allow the entire $1,710,000 including the $1,110,000 of cash consideration of the increased Agreements to be utilized by the **Company** for valid business purposes in a timely fashion, and secured for the **Investor**;

**WHEREAS**, the **Parties** wish to accommodate the industry practice of creating multiple entities to work in multiple jurisdictions and by separated function to facilitate local residency, local permitting, banking, applicable regulation and to not cross state lines, and to allow for the easier application of funding, equipment and to provide related security across these multiple entities, and

**WHEREAS**, the **Parties** wish to globally extend and modify the Agreements by way of this **Addendum VIII**.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each **Party**, the **Parties** hereby agree as follows:

1.     **$31,000 Additional Cash to be Paid to Company: Investor**, in reliance, will release funds of an additional $31,000 to the **Company** on or before the date that this **Addendum VIII** is fully executed. Mentor Partner I, LLC, a California limited liability company ("**MPI**") will act as a disbursement agent for the funds by the payment of checks at the direction of the **Company** to pay obligations of the **Company**, generally as previously outlined.

1

2. **$31,000 / 2.87% Additional Repayment to Investor:** [Promissory Note for a Working Capital Loan: Number Modifications Throughout] Principal: "$990,000" will replace "$959,000;" Remaining Amount: "$894,172" will replace "$866,775;" Payments: "$10,239" will replace "$9,953;" [Consulting Agreement: 3.] "$2,828" will replace at "$2,741;" (consulting only increases 3.17%), [Subscription Agreement: 2(b)] "$990,000" will replace "$959,000;" [Security Agreement] "$1,110,000" will replace "$1,079,000;" [Notes Purchase Agreement:2(a)] "$1,110,000" will replace "$1,079,000." *The underlined words are added replacing former amounts.*

**MONTHLY $13,067 PAYMENT SUMMARY:** Total combined payment due each 15th of the month from **Company** to **Investor** increases to **$13,067** from $12,694; meaning that **$13,067** is due on **March 15, 2019,** and the 15th of each month thereafter until the full balance is paid in full which shall be no later than April 15, 2022, on the occurrence of a balloon payment for the Remaining Amount plus any other unpaid balance remaining unpaid at that time.

**Extension of Guarantee:** [Guarantee] "…face amount of $990,000 and $120,000" will replace "$959,000 and $120,000." *The underlined words are added replacing former amounts.*

3. **3.843% Immediate Equity Interest:** Pursuant to Section 1.2, *"Delivery,"* and Section 2.3 *"Valid Issuance of Shares,"* of the Equity Purchase and Issuance Agreement effected September 6, 2018, the Company and the Affiliates, as defined in the Equity Purchase and Issuance Agreement, agree to increase Investor's equity interests in the Company and the Affiliates from 3.75% to **3.843%**. Said issuance will also include the delivery of a 3.843% equity interest in the new entity, Goya Ventures, LLC, a California limited liability company, which shall be delivered to Investor in accordance with the terms of the Equity Purchase Agreement.

4. **Full Force and Effect; Inconsistent Terms**. Except as expressly set forth in this **Addendum VIII**, the Agreements are otherwise unmodified, shall remain in full force and effect as incorporated and restated herein as if fully set forth at length. For clarity, wherever the Guaranty of March 17, 2017, is inconsistent with the Guarantee and changes executed concurrently with this **Addendum VIII**, the September 6, 2018 Guarantee will govern. Further, the **Parties** acknowledge that this **Addendum VIII** incorporates and is subject to the applicable terms and conditions set forth in the Agreements as if said terms and conditions were set forth at length herein; provided, however, in the event of any inconsistencies between the Agreements and this **Addendum VIII**, the terms of this **Addendum VIII** shall control.

**\*\*\* SIGNATURES ON THE FOLLOWING PAGE \*\*\***

IN WITNESS WHEREOF, the **Parties** have caused this **Addendum VIII** to be executed and delivered as of the date appearing in the introductory paragraph of this **Addendum VIII**.


By: _____
    Ata Gonzalez, an Individual

By: _____
    Nicole Gonzalez, an Individual


**G FarmaLabs Limited,**
**a Nevada corporation**


By: _____
    Cristina Gonzalez, its President


**Mentor Partner I, LLC,**
**a California, limited liability company**

**Mentor Capital, Inc.,**
**a Delaware corporation**


By: _____
    Chet Billingsley, its sole Manager

By: _____
    Chet Billingsley, its CEO


**ACKNOWLEDGED AND AGREED:**

**ACKNOWLEDGED AND AGREED:**


**Goya Ventures, LLC,**
**a California limited liability company**

**GFBrands, Inc., fka G Farma Brands, Inc.**
**a Nevada corporation**


By: _____
    Cristina Gonzalez, its President

By: _____
    Cristina Gonzalez, its President

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT L

**(The Rights Agreement)**
**(Complaint ¶¶44, 82-86)**

EXHIBIT

# RIGHTS AGREEMENT

**THIS RIGHTS AGREEMENT** (this "*Agreement*"), is made as of March 17TH, 2017, by and among **G FarmaLabs Limited**, a Nevada corporation (the "*Company*"), and Mentor Capital, Inc., a Delaware corporation (the "*Investor*").

## RECITALS

**WHEREAS**, the Company and the Investor are parties to that certain Notes Purchase Agreement of substantially even date herewith (the "*Purchase Agreement*"); and

**WHEREAS**, in order to induce the Investor to enter into the Purchase Agreement, the Company hereby agrees that this Agreement shall govern certain rights of the Investor;

**NOW, THEREFORE**, the parties hereby agree as follows:

1.      **DEFINITIONS**.  For purposes of this Agreement:

(a)      "**Affiliate**" means, with respect to any specified Person, any other Person who, directly or indirectly, controls, is controlled by, or is under common control with such Person, including without limitation any general partner, managing member, officer or director of such Person or any venture capital fund now or hereafter existing that is controlled by one or more general partners or managing members of, or shares the same management company with, such Person.

(b)      "**Exchange Act**" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

(c)      "**New Securities**" means, collectively, equity securities of the Company, whether or not currently authorized, as well as rights, options, or warrants to purchase such equity securities, or securities of any type whatsoever that are, or may become, convertible or exchangeable into or exercisable for such equity securities.

(d)      "**Person**" means any individual, corporation, partnership, trust, limited liability company, association or other entity.

(e)      "**SEC**" means the Securities and Exchange Commission.

2.      **REGISTRATION**.  The Company covenants and agrees as follows:

(a)      **Consent for Registration**.  Until that date which is one year following the repayment to Investor of all amounts due to Investor, the Company shall not register or qualify or propose to register or qualify (including, for this purpose, a registration effected by the Company for stockholders other than the Investor) any of its securities in connection with the public offering of such securities, without the written consent of Investor, at Investor's sole option, which consent may be given or withheld for any reason and for no reason.

(b)      **No Consent Option**.  Notwithstanding Section 2(a) above, the Company may so register or qualify or propose to register or qualify such shares, without such consent, following and conditioned upon issuance to Investor of that number of shares of each class or series of stock then outstanding equal to 1.5% of each such number of shares, calculated on a full dilution full conversion

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT M

**(The Security Agreement)**
**(Complaint ¶¶45, 87-91)**



## SECURITY AGREEMENT

This Security Agreement (this "*Security Agreement*"), dated as of March 17TH, 2017, is executed by G FarmaLabs Limited, a Nevada corporation ("*Debtor*"), in favor of Mentor Capital, Inc., a Delaware corporation ("*Secured Party*").

**WHEREAS**, Debtor has issued to Secured Party two Secured Promissory Notes, each of substantially even date herewith, in the aggregate face amount of $500,000 (the "*Notes*"); and

**WHEREAS,** in order to induce Secured Party to extend the credit evidenced by the Notes, Debtor has agreed to enter into this Security Agreement and to grant Secured Party the security interest in the Collateral (as defined below) described herein.

**NOW, THEREFORE**, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Debtor hereby agrees with Secured Party as follows:

1.      **Definitions and Interpretation**.  When used in this Security Agreement, the following terms have the following respective meanings:

"*Collateral*" has the meaning given to that term in *Section 2* hereof.

"*Lien*" shall mean, with respect to any property, any security interest, mortgage, pledge, lien, claim, charge or other encumbrance in, of, or on such property or the income therefrom, including, without limitation, the interest of a vendor or lessor under a conditional sale agreement, capital lease or other title retention agreement, or any agreement to provide any of the foregoing, and the filing of any financing statement or similar instrument under the UCC or comparable law of any jurisdiction.

"*Obligations*" means (a) all loans, advances, debts, liabilities and obligations, howsoever arising, owed by Debtor to Secured Party or any affiliate of Secured Party of every kind and description, now existing or hereafter arising, whether created by the Notes, this Security Agreement, that certain Note Purchase Agreement dated as of substantially even date herewith, entered into by and between Debtor and Secured Party, as the same may be amended from time to time (the "*Purchase Agreement*"), any other Transaction Documents (as defined in the Purchase Agreement), any modification or amendment to any of the foregoing, guaranty of payment or other contract or by a quasi-contract, tort, statute or other operation of law, whether incurred directly to Secured Party or as an affiliate of Secured Party or acquired by Secured Party or an affiliate of Secured Party by purchase, pledge or otherwise, (b) all costs and expenses, including attorneys' fees, incurred by Secured Party or any affiliate of Secured Party in connection with the Note or in connection with the collection of any portion of the indebtedness described in the foregoing clause (a), (c) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Security Agreement, and (d) the performance of the covenants and agreements of Debtor contained in this Security Agreement and all other Transaction Documents.

"*UCC*" means the Uniform Commercial Code as in effect in the State of California from time to time.  Unless otherwise defined herein, all terms defined in the UCC have the respective meanings given to those terms in the UCC.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT N

**(The Consulting Agreement)**
**(Complaint ¶¶46-47, 77-81)**

EXHIBIT

## CONSULTING AGREEMENT

This **CONSULTING AGREEMENT** is made effective as of March 1 7th, 2017 by and between **G FarmaLabs Limited,** a Nevada corporation (the "Company") and **Mentor Capital, Inc.,** a Delaware corporation (the "Consultant").

### THE PARTIES HERETO AGREE AS FOLLOWS:

1.      **Consulting Services**.  Consultant, and its personnel, shall provide to the Company professional consulting services in management, business, accounting, and finance as the Company and Consultant may mutually agree during the term of this Agreement (the "Services").  In no event shall the Services exceed 4 hours per month.

2.      **Term**.  This Agreement shall commence as of the date first written above and shall remain in effect until the later of (i) 12 months, and (ii) the date on which the Company has paid in full all obligations under the Notes Purchase Agreement of substantially even date herewith and the Promissory Notes sold thereunder.

3.      **Consulting Fee.**  In consideration for the Services rendered by Consultant in connection herewith, Company shall pay Consultant $1,400 per month, payable in arrears on the 15th of the following month, commencing with a payment on April 15, 2017 for March, 2017.

4.      **Independent Contractor.**  Nothing in this Agreement is intended or shall in any way be construed to constitute Consultant as an agent, employee or representative of the Company.  Consultant is and shall perform the Services hereunder as an independent contractor.  Consultant shall have responsibility for and control over the details and means of performing the Services and shall be subject to the directions of the Company only with respect to the scope and general results required.  Consultant acknowledges and agrees that Consultant is obligated to report as income all compensation received by Consultant pursuant to this Agreement, including any payment that may be made in stock, and Consultant agrees to and acknowledges the obligation to pay all self-employment and other taxes thereon.

5.      **Miscellaneous.**

5.1      Assignment.  This Agreement is not assignable without the written consent of the parties hereto.

5.2      Governing Law.  This Agreement shall be governed by and construed under the laws of the State of California as applied to agreements among California residents entered into and to be performed entirely within California.

5.3      Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.4      Amendments and Waivers.  Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the other party hereto.  Any amendment or waiver effected in accordance with this paragraph shall be binding upon Company and Consultant.

5.5      Severability.  If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision, or such portion of such provision as may be necessary,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT O

**(The Equity Purchase and Issuance Agreement)**
**(Complaint ¶¶48, 107-111)**

27
28

EXHIBIT

## MENTOR CAPITAL, INC.
## EQUITY PURCHASE AND ISSUANCE AGREEMENT

This **EQUITY PURCHASE AND ISSUANCE AGREEMENT** (this "Agreement"), is made as of **September 6, 2018** by and among **Mentor Capital, Inc.** (the "Purchaser"), and **G FarmaLabs Limited**, a Nevada corporation, **G FarmLabs DHS, LLC**, a California limited liability company, **G FarmaBrands, Inc.**, a Nevada corporation, **Finka Distribution, Inc.**, a California corporation, and the **G FarmaLabs WA, LLC**, a Washington limited liability company and all persons, businesses, and commercial pursuits that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, G FarmaLabs Limited, G FarmaLabs DHS, LLC or G FarmaBrands, Inc., including but not limited to, HiLevel Creative Agency, G Nugs, G Stiks, Liquid Gold, G Drinks, and Malverde (collectively, the "Company").

### RECITALS

**WHEREAS**, in connection with several other agreements, loans, leases, and more, the Company has agreed to issue to the Purchaser such shares, membership interests, partnership interests, and other equity interests as are calculated to, without double counting for any party, equal three and three quarters percent (3.75%) of the Company, (the "Shares"):and

**WHEREAS**, the Company acknowledges and agrees that the issuance of the Shares includes issuance by all entities, persons, businesses, and commercial pursuits that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with (sometimes referred to as "Affiliates") G FarmaLabs Limited, G FarmaLabs DHS, LLC, G FarmaBrands, Inc., Finka Distribution, Inc., and G FarmaLabs WA, LLC (but not including any Affiliates not involved in any way in the cannabis, hemp, marijuana and associated industry) and the Company acknowledges and agrees that the Company has control over all such Affiliates, can obligate them hereunder, will not deny the issuance of the Shares by each such Affiliate, and will use all efforts to ensure the issuance of the Shares by each Affiliate;

### AGREEMENT

**Now, THEREFORE**, in consideration of the foregoing recitals and the mutual promises, representations, warranties, and covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Sale and Issuance of the Shares

1.1 Sale and Issuance of Shares

. Company hereby acknowledges the receipt and sufficiency of the consideration provided by the Purchaser including certain loans, leases, and/or cash payment of an additional $250,000 within 24 hours of the execution of the Agreement upon Company requests for expense and leased equipment initial and final payments.

1.2 Delivery

. The Company shall deliver to Purchaser certificates, in form and substance satisfactory to Purchaser in Purchaser's sole discretion, representing the Shares within ninety days of the date first set forth above, or for any new Affiliate, within ninety days of the first control of the new Affiliate by the Company. Prior to the release of funds, Company will provide a comprehensive reporting of all Affiliates by name, legal description and address with a capitalization table for each Affiliate entity expressing associated equity holders' percentage ownership interest including a representation of Purchasers initial 3.75% interest ("Affiliates Report"). The Affiliates Report will be recalculated as appropriate and regularly delivered each 15th day of October, January, April and July from Company to Purchaser.

1.3 Dilution

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT P

**(The Master Equipment Lease Agreement)**
**(Complaint ¶¶49-54, 72-76)**

EXHIBIT

MASTER EQUIPMENT LEASE AGREEMENT

By and among

Mentor Partner I, LLC

and

G FarmaLabs Limited

and

G FarmaBrands, Inc.

January 16, 2018

# TABLE OF CONTENTS

Page

1. LEASE OF EQUIPMENT ................................................................................................ - 6 -

2. TERM AND RENT ......................................................................................................... - 7 -

4. DISCLAIMER OF WARRANTIES .................................................................................... - 7 -

5. REPRESENTATIONS, WARRANTIES AND COVENANTS ................................................. - 7 -

6. INDEMNITY ................................................................................................................. - 8 -

7. TAXES AND OTHER CHARGES ...................................................................................... - 8 -

8. DEFAULT ..................................................................................................................... - 8 -

9. REMEDIES; MANDATORY PREPAYMENT ...................................................................... - 9 -

10. SECURITY; ADDITIONAL SECURITY ........................................................................... - 10 -

11. NOTICES ................................................................................................................... - 10 -

12. USE; MAINTENANCE; INSPECTION; LOSS AND DAMAGE ......................................... - 10 -

13. INSURANCE .............................................................................................................. - 11 -

14. LIMITATION OF LIABILITY ......................................................................................... - 11 -

15. FURTHER ASSURANCES ............................................................................................ - 12 -

16. ASSIGNMENT ........................................................................................................... - 12 -

17. LESSEE'S OBLIGATION UNCONDITIONAL .................................................................. - 12 -

18. RETURN OF EQUIPMENT .......................................................................................... - 12 -

19. MISCELLANEOUS; DEFINITIONS; ENFORCEABILITY AND GOVERNING LAW ............... - 12 -

20. GUARANTEE ............................................................................................................. - 13 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT Q

**(The First Amendment to Lease Schedule No. 1)**
**(Complaint ¶52a)**

## FIRST AMENDMENT TO LEASE SCHEDULE NO. 1

This **FIRST AMENDMENT TO LEASE SCHEDULE NO 1**, dated as of this **5th day of March, 2018** (the "**First Amendment**") is entered into between Mentor Partner I, LLC, a California limited liability company ("**Lessor**"), G FarmaLabs Limited, a Nevada corporation ("**Lessee**"), and G FarmaBrands, Inc., a Nevada corporation ("**Guarantor**") pursuant to that certain Master Equipment Lease Agreement dated as of **January 16, 2018**, (as amended, modified, supplemented, restated and/or replaced from time to time, the "**Lease**") between Lessor and Lessee.

### BACKGROUND

**WHEREAS**, Lessor and Lessee entered into a certain Lease Schedule No. 1 dated January 16, 2018 as amended by this First Amendment and as may be amended, modified, supplemented, restated and/or replaced from time to time, (collectively, the "**Lease Schedule**") whereby Lessor agreed to purchase and lease to Lessee certain Equipment, to be delivered to Lessee's property located at 369 3rd Street, #464, San Rafael, CA 94901 and 4226 Green River Road, Corona, CA 92880; and

**WHEREAS**, Lessor and Lessee desire to amend the Lease Schedule to add additional leased Equipment; and

**WHEREAS**, Lessor and Lessee desire to amend the Rent Payments in conjunction with the Equipment lease modifications to the Lease Schedule contained herein; and

**WHEREAS**, Lessor and Lessee desire, in their mutual interest, to amend certain exhibits to the Lease Schedule contained herein; and

**NOW THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree to amend the Lease as provided below.

1.  **Modifications to the Lease Schedule.**

    a) **Additional Leased Equipment.** Upon the execution of this First Amendment, Lessor leases to Tenant the Equipment as more completely described on attached **Exhibit C** "*Equipment Schedule*" attached hereto.

    b) **Increase in Rental Payments.** Commencing on **March 10, 2018**, and the 10^th day of the month hereinafter, the monthly rent for the Equipment during the Term of this Lease Schedule shall be **Seventeen Thousand Three Hundred Forty and 22/100 Dollars ($17,340.22)** per month, calculated at a **Ten Percent (10%)** annual interest rate over seven (7) years in **eighty-four (84) monthly payment installments** of (i) the principal amount, computed at a one-time step up of the Total Invoice Cost, plus (ii) a risk premium and resale markup amount, computed at a percentage rate of **Thirty Percent (30%)** as the percentage of the balance of the Total Invoice Cost, plus (iii) an administrative fee of **Four Cents ($0.04)** on each One Hundred and 00/100 Dollars ($100.00) of the original Invoice Cost, as set forth in more detail in **Exhibit C**, "*Schedule of Rent Amounts,*" attached hereto as to this Lease Schedule. The total monthly Lease cost is Two and 20/100 Dollars ($2.20) per One Hundred and 00/100 Dollars ($100.00) of total, fully loaded costs, of all sorts.

    c) **Amendment to Lease Schedule Exhibits.**

        i.  **Exhibit B** of the Lease Schedule is hereby deleted in its entirety and replaced with **Exhibit C**, "*Equipment Schedule,*" attached hereto.

        ii. **Exhibit B-1** of the Lease Schedule is hereby deleted in its entirety and replaced with **Exhibit C-1**, "*Equipment Description,*" attached hereto.

        iii. **Exhibit B-2** of the Lease Schedule is hereby deleted in its entirety and replaced with **Exhibit C-2**, "*Documents Supporting Equipment Ownership,*" attached hereto.

        iv. **Exhibit C** of the Lease Schedule is hereby deleted in its entirety and replaced with **Exhibit D**, "*Schedule of Rent Amounts,*" attached hereto.

- 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT R

**(The Second Amendment to Lease Schedule No. 1)**
**(Complaint ¶52b)**

EXHIBIT

## SECOND AMENDMENT TO LEASE SCHEDULE NO. 1

This **SECOND AMENDMENT TO LEASE SCHEDULE NO 1**. dated as of this **4th day of April, 2018** (the "**Second Amendment**") is entered into between Mentor Partner I, LLC, a California limited liability company ("**Lessor**"), G FarmaLabs Limited, a Nevada corporation ("**Lessee**"), and G FarmaBrands, Inc., a Nevada corporation ("**Guarantor**") pursuant to that certain Master Equipment Lease Agreement dated as of **January 16, 2018**, (as amended, modified, supplemented, restated and/or replaced from time to time, the "**Lease**") between Lessor and Lessee.

### BACKGROUND

**WHEREAS**, Lessor and Lessee entered into a certain Lease Schedule No. 1 dated January 16, 2018, and a certain First Amendment to Lease Schedule No. 1 dated March 5, 2018 (the "**First Amendment**"), as amended by this Second Amendment and as may be amended, modified, supplemented, restated and/or replaced from time to time, (collectively, the "**Lease Schedule**") whereby Lessor agreed to purchase and lease to Lessee certain Equipment, to be delivered to Lessee's properties located at either 369 3rd Street, #464, San Rafael, CA 94901, or 4226 Green River Road, Corona, CA 92880, or 224 Malbert Road, #D, Perris, CA 92570; and

**WHEREAS**, Lessor and Lessee desire to amend the Lease Schedule to add additional leased Equipment; and

**WHEREAS**, Lessor and Lessee desire to amend the Rent Payments in conjunction with the Equipment lease modifications to the Lease Schedule contained herein; and

**WHEREAS**, Lessor and Lessee desire, in their mutual interest, to amend certain exhibits to the Lease Schedule contained herein; and

**NOW THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree to amend the Lease as provided below.

1.  **Modifications to the Lease Schedule.**

    a)  **Additional Leased Equipment.** Upon the execution of this Second Amendment, Lessor leases to Lessee the additional Equipment listed under the line item titled "*Second Amendment - Additional Equipment*" as more completely described on **Exhibit C-1** "*Equipment Description,*" attached hereto.

    b)  **Increase in Rental Payments.** Commencing on **May 10, 2018**, and the **10th day** of the month hereinafter, the monthly rent for the Equipment during the Term of this Lease Schedule shall be increased by **Six Hundred Fifty-Five and 46/100 Dollars ($655.46)** per month, calculated at a **Ten Percent (10%)** annual interest rate over seven (7) years in **eighty-four (84) monthly payment installments** of (i) the principal amount, computed at a one-time step up of the Total Invoice Cost, plus (ii) a risk premium and resale markup amount, computed at a percentage rate of **Thirty Percent (30%)** as the percentage of the balance of the Total Invoice Cost, plus (iii) an administrative fee of **Four Cents ($0.04)** on each One Hundred and 00/100 Dollars ($100.00) of the Total Invoice Cost, as set forth in more detail in **Exhibit C**, "*Schedule of Rent Amounts,*" attached to this Lease Schedule. The total monthly Lease cost is Two and 20/100 Dollars ($2.20) per One Hundred and 00/100 Dollars ($100.00) of total, fully loaded costs, of all sorts.

        i.  **Total Monthly Rent.** As a result of this Second Amendment monthly rent increase, commencing on **May 10, 2018** and the **10th day** of the month hereinafter, the total monthly rent will be **Seventeen Thousand Nine Hundred Ninety-Five and 68/100 Dollars ($17,995.68)** until February 10, 2025, and thereafter will be Six Hundred Fifty-Five and 46/100 Dollars ($655.46) until April 10, 2025, or until paid in full as further reflected at **Exhibit D,** "*Schedule of Rent Amounts,*" attached hereto.

    c)  **Modification to Lease Schedule Exhibits.**

        i.  **Exhibit C**, "*Equipment Schedule,*" to the First Amendment is hereby amended and the words: "*The Total Invoice Cost of the Equipment is One Million Twenty-Five Thousand Five Hundred Ten and 00/100 Dollars ($1,025,510.00)*" is hereby deleted in in its entirety and is replaced with: "**The Total Invoice Cost of the Equipment is One Million Sixty-Four Thousand Two Hundred Seventy-Four and 00/100 Dollars ($1,064,270.00)**"

        ii. **Exhibit C-1**, "*Equipment Description,* "is hereby supplemented to add the additional equipment attached hereto.

- 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT S

**(The Third Amendment to Lease Schedule No. 1)**
**(Complaint ¶52c)**

EXHIBIT

## THIRD AMENDMENT TO LEASE SCHEDULE NO. 1

This **THIRD AMENDMENT TO LEASE SCHEDULE NO 1.** dated as of this **5th day of June, 2018** (the "**Third Amendment**") is entered into between Mentor Partner I, LLC, a California limited liability company ("**Lessor**"), G FarmaLabs Limited, a Nevada corporation ("**Lessee**"), and G FarmaBrands, Inc., a Nevada corporation ("**Guarantor**") pursuant to that certain Master Equipment Lease Agreement dated as of **January 16, 2018**, (as amended, modified, supplemented, restated and/or replaced from time to time, the "**Lease**") between Lessor and Lessee.

## BACKGROUND

**WHEREAS**, Lessor and Lessee entered into a certain Lease Schedule No. 1 dated January 16, 2018 (the "**Original Lease Schedule**"), a certain First Amendment to Lease Schedule No. 1 dated March 5, 2018 (the "**First Amendment**"), and a certain Second Amendment to Lease Schedule No. 1 dated April 4, 2018 (the "**Second Amendment**"), as amended by this Third Amendment and as may be amended, modified, supplemented, restated and/or replaced from time to time, (collectively, the "**Lease Schedule**") whereby Lessor agreed to purchase and lease to Lessee certain Equipment, to be delivered to Lessee's properties located at either 369 3rd Street, #464, San Rafael, CA 94901, or 4226 Green River Road, Corona, CA 92880, or 224 Malbert Road, #D, Perris, CA 92570, or 13310 Little Morongo Road, Desert Hot Springs, CA 92240; and

**WHEREAS**, Lessor and Lessee desire to amend the Lease Schedule to add additional leased Equipment; and

**WHEREAS**, Lessor and Lessee desire to amend the Rent Payments in conjunction with the Equipment lease modifications to the Lease Schedule contained herein; and

**WHEREAS**, Lessor and Lessee desire, in their mutual interest, to amend certain exhibits to the Lease Schedule contained herein; and

**NOW THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree to amend the Lease as provided below.

1.   **Modifications to the Lease Schedule.**

   a)   **Additional Leased Equipment.** Upon the execution of this Third Amendment, Lessor leases to Lessee the additional Equipment listed under the line item titled "*Third Amendment - Additional Equipment*" as more completely described on **Exhibit C-1** "*Equipment Description,*" attached hereto.

   b)   **One Time Payment.** In consideration of the additional equipment to be added for Lessee, Lessee agrees to send Lessor a one-time payment of **Three Thousand Ninety-Two and 11/100 Dollars ($3,092.11)**, (the "**One Time Payment**") to Lessor as soon as possible. Upon Lessor's receipt of this One Time Payment, Lessor will approve the changes to the Equipment requested by Lessee attached hereto as **Exhibit C-2**, "*Documents Supporting Equipment Ownership,*" and Lessor will approve the reduction of the "Beginning Balance" shown on **Exhibit D**, "*Schedule of Rent Amounts,*" as further anticipated and indicated on **Exhibit D** to this Third Amendment.

   c)   **Increase in Rental Payments.** Commencing on August 10, 2018, and the 10th day of the month hereinafter, the monthly rent for the Equipment during the Term of this Lease Schedule shall be increased by **One Hundred Four and 59/100 Dollars ($104.59)** per month, calculated at a **Ten Percent (10%)** annual interest rate over seven (7) years in **eighty-four (84)** monthly payment installments of (i) the principal amount, computed at a one-time step up of the Total Invoice Cost, plus (ii) a risk premium and resale markup amount, computed at a percentage rate of **Thirty Percent (30%)** as the percentage of the balance of the Total Invoice Cost, plus (iii) an administrative fee of **Four Cents ($0.04)** on each One Hundred and 00/100 Dollars ($100.00) of the Total Invoice Cost, as set forth in more detail in **Exhibit D**, "*Schedule of Rent Amounts,*" attached to this Lease Schedule. The total monthly Lease cost is Two and 20/100 Dollars ($2.20) per One Hundred and 00/100 Dollars ($100.00) of total, fully loaded costs, of all sorts.

      i.   **Total Monthly Rent.** As a result of this Third Amendment monthly rent increase, commencing on August 10, 2018 and the 10th day of the month hereinafter, the total monthly rent will be **Eighteen Thousand One Hundred and 27/100 Dollars ($18,100.27)** until January 10, 2025, and thereafter the total monthly rent due will be varied per month as further specified on **Exhibit D**, "*Schedule of Rent Amounts.*" Payment shall continue until July 10,

- 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT T

**(The Fourth Amendment to Lease Schedule No. 1)**
**(Complaint ¶52d)**

25
26
27
28

EXHIBIT

## FOURTH AMENDMENT TO LEASE SCHEDULE NO. 1

THIS FOURTH AMENDMENT TO LEASE SCHEDULE NO 1. dated as of this 7th day of September, 2018 (the "Fourth Amendment") is entered into between Mentor Partner 1, LLC, a California limited liability company ("Lessor"), G FarmaLabs Limited, a Nevada corporation, and G FarmaLabs DHS, LLC, a California limited liability (collectively, the "Lessee"), G FarmaBrands, Inc., a Nevada corporation, Ata Gonzalez, an individual, and Nicole Gonzalez, an individual (collectively, the "Guarantor") pursuant to that certain Master Equipment Lease Agreement dated as of January 16, 2018, (as amended, modified, supplemented, restated and/or replaced from time to time, the "Lease") between Lessor and Lessee.

## BACKGROUND

WHEREAS, Lessor and Lessee entered into a certain Lease Schedule No. 1 dated January 16, 2018 (the "Original Lease Schedule"), a certain First Amendment to Lease Schedule No. 1 dated March 5, 2018 (the "First Amendment"), a certain Second Amendment to Lease Schedule No. 1 dated April 4, 2018 (the "Second Amendment"), and a certain Third Amendment to Lease Schedule No. 1 dated June 5, 2018 (the "Third Amendment") as amended by this Fourth Amendment as may be amended, modified, supplemented, restated and/or replaced from time to time, (collectively, the "Lease Schedule") whereby Lessor agreed to purchase and lease to Lessee certain Equipment, to be delivered to Lessee's properties in the state of California that Lessee has disclosed and will continue to disclose to Lessor if there is any change in the Equipment locations pursuant to Section 5 of the Original Lease Schedule, as amended; and

WHEREAS, Lessor and Lessee desire to add G FarmaLabs DHS, LLC as an additional Lessee with lease rights and obligations related to the Lease Schedule and the Lease for the use of the Equipment for its manufacturing and product development purposes; and

WHEREAS, Lessor and Lessee desire to amend the Lease Schedule and Lease to add Ata Gonzalez and Nicole Gonzalez as additional guarantors; and

WHEREAS, Lessor and Lessee desire to amend the Lease Schedule to add additional leased Equipment; and

WHEREAS, Lessor and Lessee desire to amend the Rent Payments in conjunction with the Equipment lease modifications to the Lease Schedule contained herein; and

WHEREAS, Lessor and Lessee desire, in their mutual interest, to amend certain exhibits to the Lease Schedule contained herein; and

NOW THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree to amend the Lease as provided below.

1.        **Modifications to the Lease Schedule and Lease**

   a) **Additional Lessee.** Subject to the terms and conditions of the Lease and in any Lease Schedule or amendments incorporating the terms of the Lease, G FarmaLabs DHS, LLC, a California limited liability company agrees to lease from Lessor the Equipment and Lessor agrees that G FarmaLabs DHS, LLC is added as a Lessee to the Lease and Lease Schedule. From the date of this Fourth Amendment, G FarmaLabs DHS, LLC will receive the benefits of the Lease Schedule and Lease, as may be amended from time to time. The Lease and Lease Schedule obligations of G FarmaLabs Limited, a Nevada corporation will remain in full force and effect.

   b) **Additional Guarantors.** Ata Gonzalez, an individual, and Nicole Gonzalez, an individual, each jointly and severally, agree to the responsibilities and obligations according to *Section 20 of the Lease,* "*Guarantee.*" Ata Gonzalez and Nicole Gonzalez have each concurrently executed a separate, comprehensive guarantee. Where the comprehensive guarantee conflicts with *Section 20 of the Lease,* "*Guarantee,*" the comprehensive guarantee dated August 31, 2018 shall govern.

   c) **Additional Leased Equipment.** Upon the execution of this Fourth Amendment, Lessor leases to Lessee the additional Equipment listed under the line item titled "*Fourth Amendment - Additional Equipment*" as more completely described on Exhibit C-1 "*Equipment Description.* " attached hereto.

   d) **Increase in Rental Payments.** Commencing on December 10, 2018, and the 10th day of the month hereinafter, the monthly rent for the Equipment during the Term of this Lease Schedule shall be increased by **Three Thousand Six Hundred Ninety-Three and 37/100 Dollars ($3,693.37)** per month, calculated at a **Ten Percent (10%)** annual interest rate over seven (7) years in **eighty-four (84) monthly payment installments** of (i) the principal amount, computed at a one-time step-up of the Total Invoice Cost, plus (ii) a risk premium and resale markup amount, computed at a percentage rate of **Thirty Percent (30%)** as the percentage of the balance of the Total Invoice Cost, plus (iii) an administrative fee of **Four Cents ($0.04)** on each One Hundred and 00/100 Dollars ($100.00) of the Total Invoice Cost, as set forth in more detail in Exhibit D, "*Schedule of Rent Amounts,*" attached to this Lease Schedule. The total monthly Lease cost is Two and 20/100 Dollars ($2.20) per One Hundred and 00/100 Dollars ($100.00) of total, fully loaded costs, of all sorts.

      i.        **Total Monthly Rent.** As a result of this Fourth Amendment monthly rent increase, commencing on December 10, 2018 and the 10th day of the month hereinafter, the total monthly rent will be **Twenty-One**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT U

**(The Fifth Amendment to Lease Schedule No. 1)**
**(Complaint ¶52e)**

25
26
27
28

EXHIBIT

## FIFTH AMENDMENT TO LEASE SCHEDULE NO. 1

**THIS FIFTH AMENDMENT TO LEASE SCHEDULE NO 1.** dated as of this **4th day of March, 2019** (the "**Fifth Amendment**") is entered into between Mentor Partner I, LLC, a California limited liability company ("**Lessor**"), G FarmaLabs Limited, a Nevada corporation, and G FarmaLabs DHS, LLC, a California limited liability (collectively, the "**Lessee**"), GFBrands, Inc., fka G Farma Brands, Inc.., a Nevada corporation, Ata Gonzalez, an individual, and Nicole Gonzalez, an individual (collectively, the "**Guarantor**") pursuant to that certain Master Equipment Lease Agreement dated as of **January 16, 2018**, (as amended, modified, supplemented, restated and/or replaced from time to time, the "**Lease**") between Lessor and Lessee.

## BACKGROUND

**WHEREAS**, Lessor and Lessee entered into a certain Lease Schedule No. 1 dated January 16, 2018 (the "**Original Lease Schedule**"), a certain First Amendment to Lease Schedule No. 1 dated March 5, 2018 (the "**First Amendment**"), a certain Second Amendment to Lease Schedule No. 1 dated April 4, 2018 (the "**Second Amendment**"), a certain Third Amendment to Lease Schedule No. 1 dated June 5, 2018 (the "**Third Amendment**"), and a certain Fourth Amendment to Lease Schedule dated September 7, 2018 (the "**Fourth Amendment**") as amended by this Fifth Amendment and as may be amended, modified, supplemented, restated and/or replaced from time to time, (collectively, the "**Lease Schedule**") whereby Lessor agreed to purchase and lease to Lessee certain Equipment, to be delivered to Lessee's properties in the state of California that Lessee has disclosed and will continue to disclose to Lessor if there is any change in the Equipment locations pursuant to Section 5 of the Original Lease Schedule, as amended; and

**WHEREAS**, Lessor and Lessee desire to update the Lease Schedule to match Lessor's decreased Equipment costs; and

**WHEREAS**, Lessor and Lessee desire to amend the Rent Payments as a result of this decrease in Lessor's Equipment related costs; and

**WHEREAS**, Lessor and Lessee desire, in their mutual interest, to amend certain exhibits to the Lease Schedule contained herein; and

**NOW THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree to amend the Lease as provided below.

1.   **Modifications to the Lease Schedule and Lease**

   a)   **Decrease in Rental Payments**. Commencing on **March 10, 2019**, and the **10th** day of the month hereinafter, the monthly rent for the Equipment during the Term of this Lease Schedule shall be decreased by **Two Hundred Four and 50/100 Dollars ($204.50)** per month, as set forth in more detail in **Exhibit D**, "*Schedule of Rent Amounts,*" attached to this Lease Schedule. The total monthly Lease cost is Two and 25/100 Dollars ($2.25) per One Hundred and 00/100 Dollars ($100.00) of total, fully loaded costs, of all sorts.

      i.   **Total Monthly Rent.** As a result of this Fifth Amendment monthly rent decrease, commencing on **March 10, 2019** and the **10th** day of the month hereinafter, the total monthly rent will be **Twenty-One Thousand Six Hundred Ninety-Nine and 65/100 Dollars ($21,699.65)** until January 10, 2025, and thereafter the total monthly rent due will be varied per month as further specified on **Exhibit D**, "*Schedule of Rent Amounts.*" Payment shall continue until November 10, 2025, or until the Rent is paid in full as further reflected at **Exhibit D**, "*Schedule of Rent Amounts,*" attached hereto.

   b) **Future Equipment Cost Related Modifications:** Lessor and Lessee acknowledge and agree that the determination of certain final amounts for now unknown charges such as shipping, sales tax, accumulated interest and others will be calculated and trued up (or trued down) by Lessor in its business judgment, as is common and acceptable commercial practice between established business suppliers and business customers, as needed, and such adjusted numbers and final amounts will be disclosed to the Lessee as they reasonably occur and shall be accepted by each party as final for payment, repayment, investment, guarantees and similar purposes as such cost increases or decreases reasonably occur during the duration of the Lease.

   b)   **Modification to Lease Schedule Exhibits.**

      i.   **Exhibit C**, "*Equipment Schedule,*" to the First Amendment previously amended in the Second Amendment, the Third Amendment, and the Fourth Amendment is hereby amended and the words: "*The Total Invoice Cost of the*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT V

**(The First Ata Gonzalez Guaranty)**
**(Complaint ¶55, 92-96)**

EXHIBIT

# GUARANTY

This **GUARANTY** (the "*Guaranty*"), dated as of March 1ᴙᵀᴴ, 2017, is executed and delivered by **Ata Gonzalez** (the "*Guarantor*") in favor of **Mentor Capital, Inc.** (the "*Holder*") or "*Secured Party*"), as Holder of that certain Note, as defined below, of substantially even date herewith made by **G FarmaLabs Limited** (the "*Maker*").

## W I T N E S S E T H:

**WHEREAS**, in accordance with that certain Notes Purchase Agreement of substantially even date herewith between the Maker and the Secured Party (the "*Purchase Agreement*"), and that certain Promissory Note in initial principal face amount of $380,000 to be issued by the Maker in favor of the Holder (the "*Note*") and all Transaction Documents, as defined in the Purchase Agreement; and

**WHEREAS**, in order to induce the Secured Party to enter into the Transaction Documents and to loan the amounts to the Maker thereunder, and to accept the Note, and in consideration thereof, Guarantor has agreed to guaranty the Guarantied Obligations (as defined below) and execute and deliver this Guaranty; and

**WHEREAS**, the aforesaid loans will be beneficial to the Guarantor inasmuch as Guarantor is an owner of the Maker;

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Guarantor, the Guarantor hereby agrees as follows:

1.     **Guaranty of Payment and Performance**. The Guarantor hereby irrevocably and unconditionally guarantees to the Holder the full and punctual payment when due (whether at maturity, by acceleration, or otherwise and whether for principal or interest, fees, expenses or otherwise), and the performance, of all liabilities, agreements and other obligations of the Maker to the Holder under the Note, in each case, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising or acquired, whether by way of discount, letter of credit, lease, loan, overdraft or otherwise (the "*Guarantied Obligations*"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Guarantied Obligations and not of their collectability only and is in no way conditioned upon any requirement that the Holder first attempts to collect any of the Guarantied Obligations from the Maker or resort to any security or other means of obtaining their payment. Should the Maker fail to pay any of the Guarantied Obligations as and when due, the obligations of the Guarantor hereunder shall become immediately due and payable to the Holder, without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be required by the Holder on any number of occasions.

2.     **Guarantor's Agreement to Pay**. The Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to the Holder, on demand, all costs and expenses (including court costs and reasonable legal expenses) incurred or expended by the Holder in

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT W

**(The Nicole Gonzalez Guaranty)**
**(Complaint ¶¶56-57, 97-101)**

EXHIBIT

## GUARANTY

This **GUARANTY** (the "Guaranty"), dated as of **September 6, 2018**, is executed and delivered by Nicole Gonzalez (the "Guarantor") in favor of **Mentor Capital, Inc.**, a Delaware corporation and **Mentor Partner I, LLC**, a California limited liability company (collectively, the "Creditor"), concerning debtors **G FarmaLabs Limited**, a Nevada corporation, **G FarmaLabs DHS, LLC**, a California limited liability company, and **G FarmaBrands, Inc.**, a Nevada corporation and all persons, businesses, and commercial pursuits that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, G FarmaLabs Limited, G FarmaLabs DHS, LLC, or G FarmaBrands, Inc., including but not limited to Finka Distribution, Inc., a California corporation, and G FarmaLabs WA, LLC, a Washington limited liability company (collectively, the "Company").

## WITNESSETH:

**WHEREAS**, the Creditor has advanced capital to the Company in several ways through loans, leases, equipment leases, stock issuances, and other means, including without limitation a certain Notes Purchase Agreement dated March 17, 2017, as amended and a certain Master Equipment Lease Agreement dated January 16, 2018, as amended ("Capital"); and

**WHEREAS**, in order to induce the Creditor to advance more Capital to the Company, and in consideration thereof, Guarantor has agreed to guaranty the Guarantied Obligations (as defined below) and execute and deliver this Guaranty; and

**WHEREAS**, the aforesaid Capital will be beneficial to the Guarantor inasmuch as Guarantor is an owner of the Company;

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Guarantor, the Guarantor hereby agrees as follows:

1. **Guaranty of Payment and Performance.** The Guarantor hereby irrevocably and unconditionally guarantees to the Creditor the full and punctual payment when due (whether at maturity, by acceleration, or otherwise and whether for principal or interest, fees, expenses or otherwise), and the performance, of all liabilities, agreements and other obligations of the Company to the Creditor, in each case, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising or acquired, whether by way of discount, letter of credit, lease, loan, overdraft or otherwise (the "Guarantied Obligations"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Guarantied Obligations and not of their collectability only and is in no way conditioned upon any requirement that the Creditor first attempts to collect any of the Guarantied Obligations from the Company or resort to any security or other means of obtaining their payment. Should the Company fail to pay any of the Guarantied Obligations as and when due, the obligations of the Guarantor hereunder shall become immediately due and payable to the Creditor, without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be required by the Creditor on any number of occasions.

2. **Guarantor's Agreement to Pay.** The Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to the Creditor, on demand, all costs and expenses (including court costs and reasonable legal expenses) incurred or expended by the Creditor in connection with enforcement of this Guaranty, together with interest on amounts recoverable under this Guaranty from the time such amounts become due under this Guaranty until payment; provided that if such interest exceeds the maximum amount permitted to be paid under applicable law, then such interest shall be reduced to such maximum permitted amount.

3. **Unlimited Guaranty; Affiliates; Covenants.** The liability of the Guarantor hereunder shall be unlimited to the extent of the Guarantied Obligations and the other obligations of the Guarantor hereunder (including, without limitation, under Section 2 above). Guarantor acknowledges and agrees that Guarantor is guarantying obligations of persons, businesses, and commercial pursuits that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with (sometimes referred to as "Affiliates") G

# EXHIBIT X

**(The Second Ata Gonzalez Guaranty)**
**(Complaint ¶¶58, 92-96)**

EXHIBIT

## GUARANTY

This **GUARANTY** (the "Guaranty"), dated as of **September 6, 2018**, is executed and delivered by **Ata Gonzalez** (the "Guarantor") in favor of **Mentor Capital, Inc.,** a Delaware corporation and **Mentor Partner I, LLC,** a California limited liability company (collectively, the "Creditor"), concerning debtors **G FarmaLabs Limited,** a Nevada corporation, **G FarmaLabs DHS, LLC,** a California limited liability company, and **G FarmaBrands, Inc.,** a Nevada corporation and all persons, businesses, and commercial pursuits that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, G FarmaLabs Limited, G FarmaLabs DHS, LLC, or G FarmaBrands, Inc., including but not limited to Finka Distribution, Inc., a California corporation, and G FarmaLabs WA, LLC, a Washington limited liability company (collectively, the "Company").

## WITNESSETH:

**WHEREAS,** the Creditor has advanced capital to the Company in several ways through loans, leases, equipment leases, stock issuances, and other means, including without limitation a certain Notes Purchase Agreement dated March 17, 2017, as amended and a certain Master Equipment Lease Agreement dated January 16, 2018, as amended ("Capital"); and

**WHEREAS,** in order to induce the Creditor to advance more Capital to the Company, and in consideration thereof, Guarantor has agreed to guaranty the Guarantied Obligations (as defined below) and execute and deliver this Guaranty; and

**WHEREAS,** the aforesaid Capital will be beneficial to the Guarantor inasmuch as Guarantor is an owner of the Company;

**NOW, THEREFORE,** in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Guarantor, the Guarantor hereby agrees as follows:

1. **Guaranty of Payment and Performance.** The Guarantor hereby irrevocably and unconditionally guarantees to the Creditor the full and punctual payment when due (whether at maturity, by acceleration, or otherwise and whether for principal or interest, fees, expenses or otherwise), and the performance, of all liabilities, agreements and other obligations of the Company to the Creditor, in each case, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising or acquired, whether by way of discount, letter of credit, lease, loan, overdraft or otherwise (the "Guarantied Obligations"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Guarantied Obligations and not of their collectability only and is in no way conditioned upon any requirement that the Creditor first attempts to collect any of the Guarantied Obligations from the Company or resort to any security or other means of obtaining their payment. Should the Company fail to pay any of the Guarantied Obligations as and when due, the obligations of the Guarantor hereunder shall become immediately due and payable to the Creditor, without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be required by the Creditor on any number of occasions.

2. **Guarantor's Agreement to Pay.** The Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to the Creditor, on demand, all costs and expenses (including court costs and reasonable legal expenses) incurred or expended by the Creditor in connection with enforcement of this Guaranty, together with interest on amounts recoverable under this Guaranty from the time such amounts become due under this Guaranty until payment; provided that if such interest exceeds the maximum amount permitted to be paid under applicable law, then such interest shall be reduced to such maximum permitted amount.

3. **Unlimited Guaranty; Affiliates; Covenants.** The liability of the Guarantor hereunder shall be unlimited to the extent of the Guarantied Obligations and the other obligations of the Guarantor hereunder (including, without limitation, under Section 2 above). Guarantor acknowledges and agrees that Guarantor is guarantying obligations of persons, businesses, and commercial pursuits that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with (sometimes referred to as "Affiliates") G FarmaLabs Limited, G FarmaLabs DHS, LLC, and G FarmaBrands, Inc. Guarantor acknowledges and agrees that Guarantor has control over all Affiliates and will not deny such control where it exists.

COPY



**SUM-100**

## SUMMONS **BY FAX**
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

G FARMALABS LIMITED, a Nevada corporation, ATANACHI
GONZALEZ, an individual, (See Additional Parties Attachment form)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MENTOR CAPITAL, INC., a Delaware corporation, and MENTOR
PARTNER I, LLC, a California limited liability company.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED

MAY 2 8 2019

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: Q. Roary, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Marin County Superior Court
3501 Civic Center Drive, PO Box 4988, San Rafael, CA 94913

CASE NUMBER:
*(Número del Caso):*
CIV **1902041**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Paul Marotta and Megan Jeanne, TCLG, 1342 Rollins Road, Burlingame, CA 94010; (650) 227-8000

DATE: **MAY 2 8 2019**
*(Fecha)*

Clerk, by **Q. ROARY**
*(Secretario)*

**JAMES M. KIM**, Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

[SEAL]

1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 6-3-19

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mentor Capital, Inc., et al. v. G FarmaLabs Limited, et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

(Additional Defendant Parties), NICOLE GONZALEZ, an individual aka NICOLE ALVAREZ, G FARMALABS DHS, LLC, a California limited liability company, GFBRANDS, INC., a Nevada corporation fka G FARMABRANDS, INC., FINKA DISTRIBUTION, INC., a California corporation, G FARMALABS WA, LLC, a Washington limited liability company, GOYA VENTURES, LLC, a California limited liability company, and DOES 1 through 50.

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

## MARIN COUNTY SUPERIOR COURT
P.O. Box 4988
San Rafael, CA 94913-4988

| | |
|---|---|
| PLAINTIFF: Mentor Capital Inc., ET AL | CASE NO. CIV **1902041** |
| vs. | **NOTICE OF CASE MANAGEMENT CONFERENCE (CIVIL)** |
| DEFENDANT: G Farmalabs Limited, ET AL | (Pursuant to Government Code Section 68600 et seq.) |

*Pursuant to Local Rule 1.3, the plaintiff must serve a copy of this Notice of Case Management Conference, a blank Case Management Statement (Judicial Council Form CM-110), a blank Notice of Settlement of Entire Case (Judicial Council Form CM-200), and an Alternative Dispute Resolution (ADR) Informational Notice (CV006) together with the complaint on all parties.*

This case is assigned for all purposes to Judge **JAMES CHOU** _____ in Courtroom _B_.

1. The parties/counsel to this action shall comply with the filing and service deadlines in Local Rule 1.5 and California Rule of Court 3.110, or appear at the Order to Show Cause hearing on the dates set forth below:

   Failure to File Proof of Service          08 / 06 / 2019   8:30 / 9:00 A.M.

   Failure to Answer                         09 / 08 / 2019   8:30 / 9:00 A.M.

2. Parties must appear for Case Management Conference on     10 / 15 / 2019   8:30 / 9:00 A.M.

3. The parties must be familiar with the case and be fully prepared to discuss the suitability of the case for binding or non-binding arbitration, mediation, or neutral case evaluation. **Counsel must discuss ADR options with their clients prior to attending the Case Management Conference** and should be prepared to discuss with the court their authority to participate in ADR.

4. Case Management Conference Statements must be filed with the court and served on all parties <u>at least 15 calendar days</u> before the Case Management Conference. **(Late filing may result in the issuance of sanctions.)**

*Distribution: Original - Court File; Canary - Plaintiff*